The sole question is whether the appellant taxpayer, in processing scrap metal according to specifications so that the product would be usable in open-hearth furnaces for the production of steel, was a manufacturer. If so, the metal in process will be assessed at fifty per cent. of its true value in money; if not, at seventy per cent.
Section 5385, General Code, reads:
"A person who purchases, receives or holds personal property, of any description, for the purpose of adding to the value thereof by manufacturing, refining, rectifying, *Page 122 
or by the combination of different materials with a view of making a gain or profit by so doing, is a manufacturer, and, when he is required to return a statement of the amount of his personal property used in business, he shall include therein the average value estimated, as hereinafter provided, of all articles purchased, received or otherwise held for the purpose of being used, in whole or in part, in manufacturing, combining, rectifying or refining, and of all articles which were at any time by him manufactured or changed in any way, either by combination or rectifying, or refining or adding thereto (separately listing finished products not kept or stored at the place of manufacture or at a warehouse in the same county therewith), which, from time to time, he has had on hand during the year next previous to listing day annually, if he has been engaged in such manufacturing business so long, and if not, then during the time he has been so engaged."
Section 5388, General Code, reads in part:
"Excepting as herein otherwise provided, personal property shall be listed and assessed at seventy per centum of the true value thereof, in money, on the day as of which it is required to be listed, or on the days or at the times as of which it is required to be estimated on the average basis, as the case may be. * * *
"Personal property of the following kinds, used in business, shall be listed and assessed at fifty per centum of the true value thereof, in money, on the day as of which it is required to be listed, or on the days or at the times as of which it is required to be estimated on the average basis, as the case may be: * * *
"(2) The average value of all articles purchased, received or otherwise held by a manufacturer for the purpose of being used, in whole or in part, in manufacturing, combining, rectifying or refining; the average value of all articles which were at any time by him manufactured or changed in any way, either by combining or rectifying, or refining or adding thereto, but *Page 123 
not including finished products unless kept or stored at the place of manufacture or at a warehouse in the same county therewith * * *."
The precise question here is an open one in Ohio.
In Engle v. Sohn Co., 41 Ohio St. 691, which involved a statute in substantially the same form as the one in the present case, it was held that one who purchases and slaughters swine for the purpose of adding to the value thereof by certain processes and combinations with other materials in the production of bacon, lard and cured meats for the purpose of making gain or profit therefrom is a manufacturer. In the opinion it is pointed out that 14 different materials were combined with the raw pork in producing those articles. The court was therefore dealing with a kind of manufacturing which involved "a combination of different materials."
On the other hand, it was held in Schumacher Stone Co. v. TaxCommission, 134 Ohio St. 529, 18 N.E.2d 405, that machinery used in the crushing and screening of limestone into various merchantable sizes could not be assessed for taxation as personal property used in manufacturing. It was expressly stated in the opinion in the latter case that it was not claimed that the process involved either refining or rectifying. We shall revert to that case later as it has become a bone of contention in the present litigation.
In the meantime and throughout, it must be borne in mind that the instant appeals differ from the two cases just now cited and commented on in that the complete operation in the preparation of scrap metal is in the nature of a refining or rectifying process which requires elimination of foreign elements and a change of form to make the processed material usable for a specific purpose.
Many cases from various jurisdictions have been cited pro and con in the briefs of counsel herein. Although such cases are instructive, only two of them *Page 124 
afford a close parallel, namely, David J. Joseph Co. v. City ofAshland, 223 Ky. 203, 3 S.W.2d 218, and Mayor and CityCouncil of Baltimore v. State Tax Comm., 161 Md. 234,155 A. 739. The former involved the processing of scrap iron into a "finished scrap product" (as it was called in the stipulation of facts therein) to be used by purchasers in steelmaking plants and in foundries. The court held that machinery used in cutting up the scrap in the operation of the scrap yard was "manufacturing machinery" within the meaning of the Kentucky statute.
The case was grounded on Commonwealth, for Use of RockcastleCounty, v. W. J. Sparks Co., 222 Ky. 606, 1 S.W.2d 1050, in which it was held that machinery used in mining, crushing and screening stone was used in manufacturing. It is argued that this court should reach a different conclusion from the Kentucky court with respect to processing scrap metal because of the difference in attitude of the two courts with reference to the nature of the stone-crushing business. In our judgment this argument should not prevail as there is an essential difference between the stone crushing and scrap processing.
Quarrying requires that the stone be broken up into pieces or fragments. The crushing of stone by the quarryman is but a form of the breaking-up procedure. The screening of crushed stone into assorted sizes is only a separation process — not a refining or rectifying process — and nothing is added. After all, crushing, screening and assorting may well be regarded as steps in quarrying which in a broad sense involves fitting stone for use. Accordingly such treatment of stone was not deemed manufacturing. The difference in the nature of scrap processing will be made clear, we venture to say, as the discussion develops.
In Mayor and City Council of Baltimore v. State Tax Comm.,supra, it was held that machinery of a plant in which hulls of steel vessels were stripped of all wood *Page 125 
and miscellaneous equipment, then cut into sections of suitable size and shipped to the steel-mill furnaces to be converted into steel ingots is used "entirely or chiefly in connection with manufacturing" within the meaning of the state statute. The opinion in that case will be referred to later.
Appellant herein contends that, in treating the scrap as required by the specifications, it was engaged in manufacturing and that such treatment is a refining and rectifying process. We have stated above that the treatment was in the nature of refining or rectifying, but we put the decision in this case upon a broader ground and shall explain our position fully.
In many lines of manufacturing today, parts are produced in various separate factories operated by different persons or corporations and the parts assembled by a producing company into a completed product ready for the market. The production of each part is a distinct and complete step in the manufacturing process. The construction of the mechanical parts of an automobile is as much manufacturing as assembling the parts into the finished product. The maker of cloth or thread or buttons is as much a manufacturer as the one who takes these articles and from them fabricates clothing in a clothing factory.
The preparation of scrap so that it is properly usable as a charge in an open-hearth furnace in the manufacture of steel is a task of some intricacy. An examination of the specifications set forth in the stipulation of facts shows how elaborate that preparation must be. The unloading and moving by large mechanical cranes, the sorting into various piles according to metallic content, the removing of rust, dirt, paint and other foreign matter when required, the elimination of alloy and non-ferrous metal, foreign material and the like, the cutting by acetylene torch so that cut-off parts are small enough to be taken by the alligator shears, the shearing to size by that scissors-like implement, *Page 126 
and the packing of clippings into bundles by the heavy hydraulic presses, are among the things essential to be done. In the force of upward of 40 men it is necessary to have those skilled in the operation of machinery, the methods of preparation and the nature of the metals dealt with. The objective is the creation of a charge that will fit the furnace without further effort or labor and that may be used economically.
Most of appellant's product goes to The American Rolling Mill Company. It is significant that the latter company formerly prepared its own scrap and still does prepare it to some extent. It could hardly be said that a manufacturer of steel in the preparation of scrap as a part of the process in steelmaking was not engaged in an act which was a necessary part of steel production. See Mayor and City Council ofBaltimore v. State Tax Comm., supra. The fact that appellant now performs this part of the work does not change its character. The nature of the act remains the same.
Significant language was used in Mayor and City Council ofBaltimore v. State Tax Comm., supra, at page 238, in speaking of the work of cutting up the steel hulls for furnace use: "The point made by the city is that the company does not make or manufacture anything; it merely takes a large piece of steel and cuts it into small pieces. This is, all true, but it loses sight of the scale and character of the operation and the means employed. It is one of the stages, and a very important one, in the conversion of a large mass of steel into a variety of useful steel products, and whether the whole transaction is done by one mill or two mills does not affect the application of the statute to one or both." (Italics ours.)
In the instant case a product was turned out, to wit, processed scrap, which would fit into open-hearth furnaces and which was ready for use in charging them. In our judgment, the charge, if we may call it such, *Page 127 
was a finished product within the meaning of Section 5388(2), General Code. We are compelled to hold that the processing of scrap according to specifications was an integrated step in the manufacture of steel.
For the reasons given we hold that insofar as appellant was engaged in processing scrap according to the specifications set out it was engaged in manufacturing and subject to a tax of 50 per cent. of the true value in money estimated on the average basis, as provided in Section 5388, General Code; but insofar as it received, stored, handled or sold scrap without any processing, it was not. About two-thirds of the scrap metal sold to The American Rolling Mill Company was not processed at all by appellant and would therefore be subject to a listing and assessment of 70 per cent. of the true value in money.
No other question is presented by the record.
The decisions of the Board of Tax Appeals are reversed and the causes are remanded to the board for further proceedings in accordance with this opinion.
Decisions reversed.
TURNER, MATTHIAS, HART, ZIMMERMAN and BETTMAN, JJ., concur.
WEYGANDT, C.J., dissents upon authority of Schumacher StoneCo. v. Tax Commission, 134 Ohio St. 529, 18 N.E.2d 405. *Page 128