Matthias, J.
 

 The appellant claims that it is a manufacturer with reference to the iron ore involved in this controversy, within the meaning of Section 5385, General Code, and that such ore constitutes “manufactured articles” within the meaning of Section 5388 (2), General Code.
 

 The facts essential to a consideration of the questions presented may be summarized as follows:
 

 The appellant, The Cleveland-Cliffs Iron Company, is an Ohio corporation with its principal office located in Cleveland, Ohio. For many years it has been engaged in the business of producing and selling iron ore to manufacturers of iron and steel. It operates both open pit and underground mines in the states of Michigan and Minnesota, and the ore produced from these mines is shipped by vessel to lower lake ports. Since the shipping season on the Great Lakes is limited by weather to a period from May to October, inclusive, sufficient ore is transported during that period to supply the steel mills throughout the whole year, which requires storage of ore in stock piles at these lake ports from which deliveries are made as purchased by the steel manufacturing companies.
 

 With rare exception no iron ore is suitable for blast furnace use as mined, since ores vary as to their mineral content. The requirement of the mills for a standard analysis of the ores furnished necessitates the grading of such ores. The most common method of-obtaining the desired uniformity of analysis is that of mixing-several ores of varying mineral content and chemical analysis to produce a grade of ore con-
 
 *426
 
 tabling uniform percentages of iron, silica, phosphorus,. sulphur and other ingredients.
 

 After mining operations have begun, extensive sampling of ore is necessary for the purpose of making estimates of available ore and to assist in its preliminary grading. Additional samples are taken from time to time after mining and, since these ores vary in mineral content, it is necessary before shipping to mix them. This mixing is done in séveral ways. Where ore has been stored in stock piles before loading on the cars, it is mixed by combing the pile with a power shovel. Thé ores are loaded into cars and thence into vessels. Mixing is accomplished by loading a vessel with different ores from the cars in such amounts that the resulting mixture will attain a predetermined chemical analysis.
 

 During these operations foreign material, lean ore and rock are sorted out, some ore is crushed and screened by machinery, and by a washing process some free silica is removed.
 

 All of the processing of the ores involved in these proceedings was performed by appellant either in Michigan or Minnesota, where the ore was produced.
 

 During the years involved in these appeals, the appellant maintained stock piles of this standardized ore in Cuyahoga, Ashtabula and Lucas counties, Ohio, and these are the subject of the assessments involved herein.
 

 The single question presented in this case is whether these inventories of iron ore should be assessed at 50% of the average monthly inventory value, or at 70% of such value. The determination of that question involves the construction of Sections 5385 and 5388, General Code.
 

 Section 5385, General Code, provides in part as follows :
 

 “A person who purchases, receives or holds personal property, of any description, for the purpose of
 
 *427
 
 adding to the value thereof by manufacturing, refining, rectifying, or by the combination of different materials with a view of making a gain or profit by so doing, is a manufacturer, and, when he is required to return a statement of the' amount of his personal property used in business, he shall include therein the average value estimated, as hereinafter provided, of all articles purchased, received or otherwise held for the purpose of being used, in whole or in part, in manufacturing, combining, rectifying or refining, and of all articles which were at any time by him manufactured or changed in any way, either by combination or rectifying, or refining or adding thereto (separately listing finished products not kept or stored at the place of manufacture or at a warehouse in the same county therewith), which, from time to time, he has had on hand during the year next previous to listing day annually, if he has been engaged in such manufacturing business so long, and if not, then during the time he has been so engaged. ’ ’
 

 Section 5388, General Code, provides in part as follows :
 

 “Excepting as herein otherwise provided, personal property shall be listed and assessed at seventy per centum of the true value thereof, in money, on the day as of which it is required to be listed, or on the days or at the times as of which it is required to be estimated on the average basis, as the case may be. * * *
 

 “.Personal property of the following kinds, used in business, shall be listed and assessed at fifty per centum of the true value thereof, in money, on the day as of which it is required to be listed, or on the days or at the times as of which it is required to be estimated on the average basis, as the case may be: * * *
 

 “ (2) The average value of all articles purchased, received or otherwise held by a manufacturer for the purpose of being used, in whole or in part, in manufac
 
 *428
 
 tming, combining, rectifying or refining; the average value of all articles which were at any time by him manufactured or changed in any way, either by combining or rectifying, or refining or adding thereto, but not including finished products unless kept or stored at the place of manufacture or at a warehouse in the same county therewith; and agricultural products on farms. * * *”
 

 Under Section 5388, General Code, to authorize the listing and assessing of the property of the appellant at
 
 50%
 
 of the value thereof, it is essential that appellant be a manufacturer, since this section is applicable only to “articles purchased, received or otherwise held by a manufacturer for the purpose'of being used, in whole or in part, in manufacturing, combining, rectifying or refining,” and'“articles which were at any time by him manufactured or changed in any way, either by combining or rectifying, or refining or adding thereto.”
 

 Section 5385, General Code, defines a manufacturer as a “person who purchases, receives or holds personal property, of any description, for the purpose of adding to the value thereof by manufacturing, refining, rectifying, or by the combination of different materials with a view of making a gain or profit by so doing.”
 

 Under the facts presented by the record in this ease, is the appellant a manufacturer within the purview of these statutory provisions?
 

 This court has heretofore considered a similar question in the case of
 
 Schumacher Stone Co.
 
 v.
 
 Tax Commission,
 
 134 Ohio St., 529, 18 N. E. (2d), 405, 120 A. L. R., 1199. The Schumacher Stone Company was engaged in quarrying stone and preparing the stone for sale by successive processes of crushing and screening. Purchasers from the stone company required different sizes of stones and this process prepared the stone to meet the various specifications. This court
 
 *429
 
 there held that the “Machinery, used in crushing and screening limestone into various merchantable sizes without the application of any art or process to change the form or appearance of the broken pieces of stone, each grade being designated according to size and use, mostly for road construction but also for other minor purposes, is not, and should not be assessed as, personal property used in manufacturing, within Sections 5385, 5386 and 5388, General Code.”
 

 The similarity between the process involved in-that case and the operations of the appellant herein is apparent. In neither instance was the product substantially altered. The ore produced by the appellant is still'iron ore when sold to the steel manufacturing companies, and it was sold to them as such. Numerous cases were cited in the opinion in the
 
 Schumacher case
 
 which show the rule to be well established that such operations as above set forth are not deemed to be manufacturing. Neither do the processes performed by the appellant constitute “refining, rectifying, or by the combination of different materials ’ ’ within the meaning of Section 5385, General Code. Those words have clearly defined meanings and do not include such operations. The mere separation and removal of free silica from the iron ore, which thereby leaves the ore higher in iron and lower in silica, does not constitute either rectifying or refining as those terms are defined. The supporting cases cited in the opinion in the
 
 Schumacher case
 
 are applicable to this case, as is also the discussion of the term “manufacturing.”
 

 It will be observed that the facts disclosed by the record in this case are readily distinguishable from those involved in the cases of the
 
 Middletown Iron & Steel Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 139 Ohio St., 113, 38 N. E. (2d), 585, and
 
 France Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 143 Ohio St., 455, 55 N. E. (2d), 652. In the
 
 Middletown case,
 
 miscellaneous steel articles were reduced by mechanical processes to steel scrap of par
 
 *430
 
 ticular sizes and specifications, and the finished product which resulted from the process employed was quite different in form and substance from the material subjected to such process.
 

 Likewise, the
 
 France Company case
 
 arose under the sales-tax statutes, Sections 5546-1 to 5546-25, General Code, which exempted from the sales tax property which it was the purpose of the consumer
 
 “to
 
 use or consume * * * directly in the production of tangible personal property for sale by * * * processing.”
 

 The definition of the word “processing” is broader than the word “manufacturing,” and while the writer of this opinion continues in disagreement with the conclusion reached by the majority in that case, as shown by his dissenting opinion, that case may be differentiated from the instant case on the facts.
 

 It is well settled that the provision of any statute which purports to except certain property from general statutory provisions governing taxation is a measure of exemption, and that laws relating to exemption of property from taxation being in derogation of equal rights are strictly construed.
 

 Our conclusion is that the finding of the Board of Tax Appeals that the appellant in this case is not engaged in manufacturing and its approval of the increased assessments made by the Tax Commissioner are neither unreasonable nor unlawful. It follows that the decision of the Board of Tax Appeals in each of the two cases here presented should be and is affirmed.
 

 Decisions affirmed.
 

 Weygandt, C. J., Zimmerman, Williams, Turner and Hart, JJ., concur.
 

 Bell, J., not participating.