Taet, J.
It is contended by Red Top that the machinery and equipment located in its plant No. 2 *20 should be valued at 10 per cent of their original cost.
Plant No. 2 was completely shut down during a substantial part of the tax year 1949 and almost all the tax year 1950. Its machinery was placed in a preservative state, it was not used for any manufacturing purpose whatsoever, and the plant was closed down and locked up during that period of time.
Section 5328, General Code (Section 5709.01, Revised Code), provides that “all personal property located and used in business in this state” is subject to taxation. Section 5325-1 General Code (Section 5701.08, Revised Code), provides in part:
“Within the meaning of the term ‘used in business,’ * * * personal property shall be considered to be ‘used’ * * * when kept and maintained as a part of a plant capable of operation, whether actually in operation or not * *
Under the provisions of that statute, the machinery and equipment in Red Top’s plant No. 2 were being used in business and were taxable during the tax years 1949 and 1950. See Standard Oil Co. v. Glander, Tax Commr., 155 Ohio St., 61, 98 N. E. (2d), 8.
The only basis claimed for classifying this property as idle property and valuing or listing it at 10 per cent of its original cost is a directive of the Tax Commissioner.
Section 5388, General Code (Section 5711.22, Revised Code), provides in effect that machinery and equipment of a manufacturer, used in business, ‘ ‘ shall be listed and assessed at fifty per centum of the true value thereof, in money, on the day as of which it is required to be listed.” Section 5389, General Code (Section 5711.18, Revised Code), provides in part:
“In the case of personal property used in business, the book value thereof, if any, less book depreciation, at such time or times, shall be listed and such depre *21 ciated book value shall be taken to be the true value of such property, unless the assessor shall find that such depreciated book value is greater or less than the then true value of such property in money. Claim for any deduction from * * * depreciated book value of personal property must be made in writing by the taxpayer at the time of making returns * *
Although the Tax Commissioner may give consideration to the fact that machinery and equipment are idle, in determining that the “true value of” such machinery and equipment “in money” is less than their “depreciated book value,” we are of the opinion that there is no statutory authority for his valuing (or, apart from the 50-per-cent provision of Section 5388, General Code, for the taxpayer listing) such personal property used in business at any arbitrary percentage of its cost without regard to its “depreciated book value” or its “true value * * * in money.”
We have been referred to nothing in the record, apart from the fact that this machinery and equipment were idle, to show that “the true value * * * in money” of the machinery and equipment in question was less than their “depreciated book value.” This machinery and equipment were not valued at a figure in excess of their “depreciated book value.” It follows that «this contention of appellant cannot be sustained.
Eed Top contends that its inventory of new labels and its inventory of caustic soda should have been assessed at 50 instead of 70 per cent of their true value.
It is necessary to apply labels to the bottles in order to conform with regulations of the federal government and the Ohio Department of Liquor Control and to identify the beer in the bottles as to quality and proper grading. The caustic soda is used in a cleaning and *22 washing' machine which washes the used bottles before they are filled with beer.
Section 5388, General Code (Section 5711.22, Revised Code), provides in part:
“Excepting as herein otherwise provided, personal property [used in business] shall be listed and assessed at seventy per centum of the true value thereof, in money, on the day as of which it is required to be listed, or on the days or at the times as of which it is required to be estimated on the average basis * * *.
“Personal property of the following kinds, used in business, shall be listed and assessed at fifty per centum of the true value thereof, in money, on the day as of which it is required to be listed, or on the days or at the times as of which it is required to be estimated on the average basis, as the case may be.
6 6 =* * *
“(2) The average value of all articles purchased, received or otherwise held by a manufacturer for the purpose of being used, in whole or in part, in manufacturing, combining, rectifying or refining; the average value of all articles which were at any time by him manufactured or changed in any way, either by combining or rectifying, or refining or adding thereto * * V’ (Emphasis added.)
We agree with the contentions of the Attorney General that all the articles used by a manufacturer are not automatically entitled to a 50-per-cent classification; that Red Top manufactures béer and does not manufacture labels; and that caustic soda is not a material used to make beer and does not give beer any new quality or property. But, even if these contentions are sound, it does not follow that the labels and the caustic soda are not, within the meaning of Section 5388, General Code, “articles * * * held by a manufacturer for the purpose of being used * * * *23 in manufacturing [or] combining.” If they are, they come within the statutory words providing for a listing and assessment at 50 per cent.
Admittedly the labels and the caustic soda are, within the meaning of the statutory language, “articles held by a manufacturer for the purpose of being used.” The only remaining question is whether the proposed use is in “manufacturing” or “combining.”
Certainly, the proposed use of the caustic soda is to combine it with the used bottles so as to get them in such a condition that they may be filled with beer for sale. Until they are cleaned, there can be no bottles of beer. The proposed use of the labels is to combine them with the bottles so as to create something which can be sold. Until the beer bottle is labeled, the manufacturer has no product which he can sell.
The word “manufacturer” is derived from the Latin. Literally, it means one who makes by hand. In our times, it has a much broader meaning. This is recognized in the words of Section 5385, General Code (Section 5711.16, Revised Code), which state that “a person who purchases, receives or holds personal property, of any description, for the purpose of adding to the value thereof by manufacturing * * * or by the combination of different materials with a view of making a gain or profit by so doing, is a manufacturer.”
Red Top is a manufacturer because it “holds personal property * * * for the purpose of adding to the value thereof * * * by the combination of different materials with a view of making a gain or profit by so doing. ’ ’
Among other things, it holds materials such as this caustic soda, used glass bottles, beer which it has made by combining certain other materials, and these labels for the bottles. It combines the used bottles *24 with the caustic soda to make the bottles usuable as containers for the beer. It then combines the beer with the bottles when it fills the bottles. It then combines the labels with the bottles. All these combinations of materials must be and are made before Red Top has a combination of materials from which it can make any gain or profit by any of the combinations which it has made.
What the Board of Tax Appeals and the Tax Commissioner have each failed to recognize is that the product of Red Top is the salable bottle of beer and not merely an unlabeled bottle of beer or beer before placed in a bottle.
If carried to its logical conclusion, the contention, that the caustic soda and the labels are not held by Red Top for the'purpose of manufacturing or combining because they are not to be used as ingredients in making beer, would require a conclusion that the beer bottles are not held by Red Top for the purpose of manufacturing. Certainly the bottles are not an ingredient of the beer. However, neither the Tax Commissioner nor the Board of Tax Appeals has ever suggested that the bottles are not held by Red Top for the purpose of manufacturing or combining and so are required to be listed for taxation at 70 per cent instead of 50 per cent of their true value in money.
As stated by Hart, J., in Eastern Machinery Co. v. Peck, Tax Commr., 160 Ohio St., 144, 149, 114 N. E. (2d), 55:
“In addition to the statutory definition above quoted, these statutes, as related to the subject of taxation, tend to broaden the traditional definition of ‘manufacturer’ or ‘manufacturing.’ Under Section 5385, General Code, one is deemed a ‘manufacturer’ if he purchases, receives or holds personal property of any description for the purpose of adding to the value *25 thereof by refining, rectifying or combining different materials.”
Failure to recognize this, in cases where this court believes that that expressed legislative intent was unwise, has led to inconsistent decisions with respect to that statutory language. Thus, it is impossible to reconcile the stated conclusion in Cleveland Cliffs Iron Co. v. Glander, Tax Commr., 145 Ohio St., 423, 62 N. E. (2d), 94, with the foregoing reasoning in Eastern Machinery Co. v. Peck, supra, or with the decision in Middletown Iron & Steel Co. v. Evatt, Tax Commr., 139 Ohio St., 113, 38 N. E. (2d), 585, 138 A. L. R., 426. As pointed out in B. F. Goodrich Co. v. Peck, Tax Commr., 161 Ohio St., 202, 118 N. E. (2d), 525, it will “complicate the construction of statutory language to bend the usual rules of statutory construction * * * so as to give a meaning to the legislative language which we may believe the G-eneral Assembly should have expressed.” Furthermore, it will encourage litigants to try to get this court to so bend those rules of statutory construction where they would otherwise be inclined to recognize decisions apparently required by statutory language.
It may be observed that the decision in Cleveland Cliffs Iron Co. v. Evatt, supra, may be sustained on the ground, argued in the brief of the Tax Commissioner in that case, that, even if the processed iron ore there involved was a manufactured article, it was not such a manufactured article as entitled to the 50-per-cent valuation, because it was, within the meaning of Section 5388, General Code, a finished product not “kept or stored at the place of manufacture or at a warehouse in the same county therewith.”’
Our conclusion is that the decision of the Board of Tax Appeals, to the extent that it required the listing and valuation of Red Top’s inventory of these labels *26 and this caustic soda at more than 50 per cent of its true value, is unreasonable and unlawful.
Red Top contends that both the method used to determine the number of Red Top’s bottles in the hands of Red Top’s Ohio customers and also the amount found as the true value for taxation of each such bottle were unreasonable.
In order to simplify consideration of the questions raised with respect to bottles, we will discuss only 12-ounce bottles. What we decide with respect to bottles of that size will dispose of similar questions raised with respect to bottles of other sizes.
When Red Top sold its beer in reusable bottles, the purchaser was required by regulations of the Ohio Board of Liquor Control to pay a cash deposit of two cents for each such 12-ounce bottle. Those regulations required Red Top to return on demand the deposit made on the sale of such a bottle of beer when the empty bottle was returned to Red Top. These reusable bottles, which had been delivered by Red Top in the sale of its beer and not returned to Red Top, have been referred to by the parties as “floating bottles.”
Two questions have been raised by Red Top with respect to these floating bottles. The first relates to the number of such “bottles floating in Ohio” and the second to the amount found as the true value of each such bottle.
Notwithstanding any provisions in contracts with distributors with respect to their ownership by Red Top, we have considerable doubt as to whether reusable bottles floating in Ohio, which were delivered with the sale of Red Top beer, represent property of Red Top for the purposes of taxation, especially after they have been delivered by such a *27 distributor to his customers. However, Red Top has not raised that question in the instant case and no such question was raised with respect to the bottle containers in Red Top Brewing Co. v. Peck, Tax Commr., 158 Ohio St., 259, 109 N. E. (2d), 4. We will, therefore, assume, without deciding, that reusable bottles floating in Ohio, which were delivered with the sale of Red Top beer, are property of Red Top for the purposes of taxation.
With respect to the question as to the number of such bottles floating in Ohio, the decision of the Board of Tax Appeals states:
‘ ‘ These numbers were obtained by the departmental examiner from appellant’s accountant. After the examiner determined their value he reduced both sums by 4 per cent because of the previous Supreme Court ruling in Red Top Brewing Co. v. Peck, 158 Ohio St., 259, that 4 per cent of the cases floating in Ohio would not be returned. Quoting from appellant’s briefs: ‘The taxpayer contends that the records definitely show that the number of bottles floating in Ohio should be computed on a basis of an annual loss of 4 per cent from the beginning inventory of 1939; and that computing a loss on the basis of only one year’s reduction of 4 per cent on the difference between all the bottles shipped and all bottles returned does not reflect the actual loss of bottles and results in requiring the taxpayer to pay tax on bottles not in existence.’ This board passed upon this same question as applied to containers in the previously noted case. As we understand it, the board was affirmed in respect thereto. There is no new and additional evidence before us in this case that would cause us to depart from our previous conclusion.”
Although this court did approve the decision of the *28 Board of Tax Appeals with respect to bottle containers in Red Top Brewing Co. v. Peck, Tax Commr., supra, the factual situation presented for review in that case was vastly different from that involved in the instant case. Thus, in the decision of the Board of Tax Appeals in that case, it was stated:
“We note that the examiner found 23 wood cases inside the company’s plant being then in use as receptacles for holding bottles, which would be destroyed as soon as the bottles were removed. It is proved that these wood cases are obsolete and no longer used in the industry. In the absence of evidence we think it fair to assume that these 23 cases are fairly representative of the 121,734 cases in the hands of Ohio consumers. We note further that the percentage of cost value as applied to these 23 cases is 10 per cent thereof; and a 50 per cent of cost value was applied to the-121,734 cases in the hands of Ohio customers. We see no reason why these 121,734 cases should not bear the same valuation as that accorded the 23 cases in appellant’s plant. The Board of Tax Appeals, therefore, finds the assessable tax value of the 121,734 wood cases in Ohio outside its plant entitled to a 10 per cent of cost valuation instead of a 50 per cent thereof, which effects' a reduction from the $39,564, as found by the Tax Commissioner to the sum of $7,912 as the true tax value thereof. This reduction changes the figure of $66,435, as -found by the Tax Commissioner to the sum of $34,783.
“The board further finds that this sum of $34,783, so found is entitled to a further overall reduction of 4 per cent for cases and cartons then no longer in existence, which reduces this overall sum of $34,783 by $1,391 leaving the true assessable tax value of this questioned item of $66,435 to be $33,392.”
*29 It appears therefore that a very substantial quantity of the bottle containers involved in that case were valued at only 10 per cent of their cost, so that the overall valuation as to all the bottle containers involved in that case was reduced to only about 26 per cent of their cost. It was, therefore, difficult for this court to see any substantial prejudice to Red Top, even though it ■ was entitled to much more than a 4-per-cent allowance for bottle containers which no longer existed. On the other hand, in the instant case, even- if Red Top’s contention with respect to valuation is sustained, bottles will be valued at about 40 per cent of cost so that, bearing in mind that Red Top is taxed on a 50-per-cent valuation of bottles floating in Ohio (see Section 5388, General Code), a failure to make an adequate allowance for bottles no longer in existence would be almost certain to operate to the prejudice of Red Top.
Furthermore, there is in our opinion additional evidence in the instant case that should require the Board of Tax Appeals to make an allowance substantially in excess of 4 per cent with respect to bottles no longer in existence. It would serve no useful purpose to analyze the evidence offered in support of Red Top’s contention that an allowance of only 4 per cent for bottles, floating in Ohio and no longer in existence, is unreasonable. However, it may be observed that some of this evidence indicates without dispute that a case of bottles makes on the average about ten round trips from the brewery to the consumer and back to the brewery in one year. These bottles are made of glass. It is certainly reasonable to conclude that one glass bottle in each case would be destroyed or disappear while out of the hands of the brewery during *30 those ten round trips. If it did, then the allowance contended for by Red Top would be reasonable.
Although it is not the function of this court to determine from the evidence what allowance, would be reasonable, it is the conclusion of this court that the decision made by the Board of Tax Appeals with respect to the allowance for bottles, floating in Ohio and no longer in existence, is clearly unreasonable.
The Tax Commissioner valued bottles floating in Ohio at the cost price for new bottles. His valuation was approved by the Board of Tax Appeals. As a result, these bottles were valued at 2.5 cents each for 1949 and 2.9 cents each for 1950. Red Top contended that these bottles should have been valued at no more than two cents each.
The price of two cents was fixed by the Ohio Board of Liquor Control as the amount of the deposit to be made for the bottle on the purchase of a bottle of beer and the amount which should be paid back on the return of the empty bottle. In disregarding this fact as establishing the value of bottles floating in Ohio, both the Tax Commissioner and the Board of Tax Appeals have taken an inconsistent position in the instant case. If, as they contend, only 4 per cent of these bottles will ever fail to return over and over again to Red Top at two cents a bottle, it would appear certain that they are worth no more. That would seem almost as certain even if, as Red Top contends, 4 per cent of bottles floating in Ohio at the end of each year will never be returned. If these bottles had a true value of more than two cents each, there would be no such returns at that price.
In our opinion, the decision of the Board of Tax Appeals that these used bottles were worth more than two cents each was clearly unreasonable.
*31 Except with respect to the valuation of Red Top’s plant No. 2, the decision of the Board of Tax Appeals is reversed and the cause is remanded for further proceedings in accordance with this opinion.

Decision reversed m part.

Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart and Bell, JJ., concur.