KROGER CO. ET AL. *v.* SCHNEIDER, TAX COMMISSIONER.

[Cite as Kroger Co. v. Schneider, 1 Ohio Misc. 9.]

(No. 218573—Decided December 1, 1964.)

DECLARATORY JUDGMENT: Court of Common Pleas for Franklin County.

*Messrs. George, Greek, King & McMahon,* for plaintiffs.

*Mr. William B. Saxbe,* attorney general, and *Mr. Daronne R. Tate,* for defendant.

HARTER, J. This litigation is brought to me for decision on a motion for a judgment on the pleadings. There is no true factual dispute. The issues are ones of law, not fact, and no problem is raised as to the propriety of the procedure attempted to bring this matter before the court. Indeed, I hold the procedure is proper under Section 2323.18, Revised Code.

The primary issue of law centers upon the enactment by the Ohio Legislature during the year 1963 of a series of new taxation statutes relating to personal property. These statutes became effective October 4, 1963. This action, challenging their validity and constitutionality, was commenced October 26, 1963.

To point up the way in which the plaintiff corporations are potentially involved in this taxation plan, it is appropriate that I recognize that each plaintiff corporation is engaged in the manufacture, purchasing, distribution and sale of food and other merchandise in Ohio and in interstate commerce. As of the time of the filing of this action each plaintiff operated plants, warehouses and retail stores (often designated as "super-markets") within Ohio. Specifically as to each plaintiff: the Kroger Company had facilities in 183 different Ohio taxing districts; the Atlantic and Pacific Tea Company, Inc., had such facilities in 198 different Ohio taxing districts, and Colonial Stores, Inc., had such facilities in 53 different Ohio taxing districts.

The prime target for this challenge as to constitutionality is Section 5711.22(B), Revised Code. It is provided by that statute that a merchant be taxed (as to the personal property such merchant holds for sale, not for resale) for the year 1964 at 70% of the value of such property above $100,000.00 and at 66% of the value of such property below $100,000.00. Each successive year thereafter, to 1968, the percentage of valuation on the first $100,000.00 of value of such property is reduced at the rate of 4% per year until, after 1967 and for the years commencing with 1968, such personal property shall be taxed at 50% of the value with the property having a value in excess of

$100,000.00 continuing to be taxed, through all the years, at 70% of value. In describing the provisions of this statute, I have not tried to use the exact language of the statute; rather, I have tried to reduce the plan, so adopted by the Legislature, to its simplest terms.

Quite obviously and to exaggerate slightly, the corporations which have many processing plants and supermarkets within Ohio and inventories of many millions of dollars are taxed at almost a straight 70%-of-value basis (even when the first $100,000.00 of value is taken off at the progressively diminishing rate) whereas the merchants who own less than $100,000.00 in value of inventory would, if this statute is held to be valid and enforceable, start with a 66% of value tax basis in 1964 and ultimately be taxed in 1968, and thereafter, at only 50% of value. This percentage differential, in the aggregate, becomes very substantial when converted into dollars.

While the point is not directly presented in the pleadings, or the briefs, before me, it is fair to observe, I believe, that the Legislature of Ohio must have been striving, in its enactment of this tax plan, to promote what the Legislature considered to be a kind of equitable, social justice, on the theory, perhaps, that a graduation of a merchant's taxes on amount of inventory in proportion to capacity to pay, might well result in a more genuine equality than flat, uniform rates.

Regardless of what motives may have actuated the enactment of this tax plan, I am called upon to decide whether this graduated method of taxation of merchants is valid under the "due process of law" and "equal protection" clauses of the Fourteenth Amendment to the Federal Constitution. It must also be observed that, although, since 1931, classification of personal property for taxation purposes is permissible under Section 2, Article XII of the Ohio Constitution (where it is provided that "Land and improvements thereon shall be taxed by uniform rule according to value"), we must still appraise our taxation statutes as to personal property in the light of the language of Section 2, Article I of the Ohio Constitution, where it is provided "All political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." It has been said that "If government is instituted for the equal protection and benefit of the people, it follows that laws which

are passed under a government so instituted, must likewise be for the equal protection and benefit of the people." (Burket, J., in *State ex rel. Schwartz*, v. *Ferris*, 53 Ohio St. 314, at 336.) Accordingly, we refer to Section 2, Article I of our Constitution as our "equal protection of law" clause.

The tax plan for Ohio merchants under this 1963 legislation was quite apparently designed directly, necessarily and intentionally to create *an inequality* of tax burdens, conditioned upon the quantity of inventory owned by specific taxpayers. When such is the legislative intention, the courts must look for constitutional justification for such action. If there is a clear and manifest conflict between a legislative enactment and some provision of the constitution, the enactment must be declared unenforceable and void.

The Attorney General of Ohio, in representing the defendant as Tax Commissioner, asserts that the tax plan here under attack can be upheld upon the theory that the Legislature was enacting a type of "exemption," and that a provision in the nature of an exemption is proper under *Cleveland-Cliffs Iron Co.* v. *Glander, Tax Commr.* (1945), 145 Ohio St. 423, and other Ohio decisions. The Attorney General's brief concedes that "self-imposed labels cannot, of course, be determinative of the nature of the tax." While this concession was used by the Attorney General in challenging the contention of the plaintiffs that the tax here provided for was an "ad valorem tax" on personal property, I feel the expression can, and should, be turned around to test the defendant's "exemption" theory. The Legislature did not designate the graduated arrangement as an "exemption" but it is obvious that, even had the Legislature done so, such designation would not have bound the courts. Our duty, in determining what kind of a tax this graduated plan provides for, is to ascertain, not from the name which the Legislature used, but by what kind of tax it is, in fact. There is nothing sacred in a name; we ask, rather, what the tax in fact is; we look through form to substance.

When I undertake to look through the form to the substance of the graduated tax plan, I can find no proper basis for the application of the doctrine of "exemption." The tax is, in fact and in law, as I see it, a tax on the "true value in money" of "personal property."

Our issue here is whether there must be a uniform rule for *all* personal property in a given class or, to obviate such uniform rule, can it be said that a "classification," and graduation of tax rates, on the basis of "quantity owned" by a given taxpayer, or class of taxpayers, is proper?

As I see the problem thus presented, and I think I have stated it fairly, the Federal "due process" and "equal protection" clauses and the Ohio "equal protection of law clause", all forbid a state from levying any *taxes directly on property* at graduated or progressive rates. The federal government *may* do this in the income tax field because the 16th Amendment gave that government such power and the state of Ohio may do it where our Constitution, as amended, expressly so allows but not otherwise.

I have italicized the words *"taxes directly on property"* in this last paragraph because such phrase must be contrasted and compared with graduated, or progressive, rate taxation which is of the *excise* type. It must be conceded that the courts have upheld graduated taxes where *excises* have been involved. This is probably upon the theory that, where a governmental authority grants a right or privilege, such authority may attach conditions to such right or privilege. One such condition is that the recipient of the right or privilege must accept a taxation schedule which is graduated. In such event, "classification" may be tested and, if the classification of *all* taxpayers is reasonable and non-discriminatory as to members of the same class, the graduated *excise* tax device can, and does, receive judicial approval as to its enforceability. As examples of this theory, reference may be had to *Atchison, Topeka & Santa Fe Rd. Co.* v. *Matthews* (1899), 174 U. S. 96; *Steele, Hopkins & Meredith Co.* v. *Miller* (1915), 92 Ohio St. 115; *City of Xenia* v. *Schmidt* (1920), 101 Ohio St. 437; and *State ex rel. Hostetter* v. *Hunt* (1937), 132 Ohio St. 568.

However, the tax here challenged is not an *excise* tax. It is, rather, an *ad valorem* tax directly upon property. No reported decision by any court has been found by counsel, or by this court, which *directly* bears upon the constitutional issue here presented. By analogy and perhaps in what we lawyers refer to as "dictum", the case of *Steward Dry Goods Co.* v. *Lewis* (1935), 294 U. S. 550, comes as close to our situation as

any decision. I choose to follow the reasoning of that case. The tax there challenged had been promulgated by the state of Kentucky. It purported to levy a graduated tax upon gross sales of retail merchants. While it was in the nature of an *excise* rather than a direct property tax, the United States Supreme Court held it invalid in language which I deem appropriate to our situation. I quote from that opinion, beginning at page 556, Mr. Justice Roberts:

"All retailers, individual and corporate, selling every description of commodities, in whatever form their enterprises are conducted, make up the taxable. class. And the excise is laid in respect of the same activity of each of them—the making of a sale. Although no difference is suggested, so far as concerns the transaction which is the occasion of the tax, between the taxpayer's first sale of the year and his thousandth, different rates may apply to them. The statute operates to take as the tax a percentage of each dollar due or paid upon every sale, but increases the percentage if the sale which is the occasion of the tax succeeds the consummation of other sales of a specified aggregate amount. As found by the court below, the act of making a sale, which with all others made in the taxable year represents a total sales price of $400,000 or less, results in the imposition of a tax of 1/20th of one per cent, upon the price, whereas the making of the same sale by one who has theretofore sold $400,000 but less than $500,000 worth of goods entails a tax of 2/20ths of one per cent., or by one whose prior sales aggregate $900,000, a tax 17/20ths of one per cent."

\* \* \*

"Thus understood, the operation of the statute is unjustifiably unequal, whimsical and arbitrary, as much so as would be a tax on tangible personal property, say cattle, stepped up in rate on each additional animal owned by the taxpayer, or a tax on land similarly graduated according to the number of parcels owned."

While the foregoing comments, in effect, are sufficient to conclude the expression of my views as to why I deem the statute here challenged to be repugnant to both the Federal and the Ohio constitutions, I feel compelled to comment, briefly, upon the one case which, at first consideration, might seem to lay

down a rule contrary to my thinking. The *amicus curiae* brief which was filed in this case (with court approval and with appreciation from me) relied chiefly upon the case of *Apartment Operators Assn.* v. *City of Minneapolis* (Minn. 1934), 254 N. W. 443. The Minnesota statutes there under attack separately classified homesteads and provided that the first $4000 in value of a homestead was to be assessed for taxation at a fixed percentage of true value while the value of such homestead in excess of $4000 was to be assessed at a higher percentage. Such method of taxation was upheld by the Minnesota court.

I feel I should reject the reasoning of that case for several reasons. In the first place, it might be fairly said that Minnesota was actually dealing with "exemptions". Even in Ohio, tax devices are upheld where they result in some discrimination *if* they are actually "exemptions". See *Middletown Iron & Steel Co.* v. *Evatt, Tax Commr.* (1941), 20 O. O. 390 (reversed on other grounds 139 Ohio St. 113) and *Cleveland-Cliffs Iron Co.* v. *Glander, Tax Commr.* (1945), 145 Ohio St. 423. But I have indicated earlier in this opinion that I believe that the statute here challenged *is not* an exemption statute. For this reason, therefore, I reject the Minnesota doctrine.

In the second place, it may be fairly said that all real estate is unique, and there was an attempt in Minnesota to let this uniqueness of real estate form at least a part of the basis for differentiating in the method of taxing homesteads. While it can be said that two parcels of real estate resemble each other, they certainly are different to some degree because their fixed location makes them different, and, potentially, gives them different values. This offers my second ground for distinguishing the Minnesota decision.

For my third, and final, reason for rejecting the Minnesota theory, I point out that Minnesota, unlike Ohio, has traditionally followed the broad concepts of social planning which have prevailed for centuries in Scandinavian countries. The central government, under those theories, decides what is best for its citizens and then enacts laws consistent with the government's ideas of social engineering. Equitable results may thus be arrived at, but, in my opinion, "equity" is not the issue in a constitutional law area. One paragraph from Judge Burket's

16

opinion in *State, ex rel. Schwartz, v. Ferris* (1895), 53 Ohio St. 314, succinctly states why, on this point, I reject the Minnesota ruling. I quote, page 339 of 53 Ohio State:

"* * * In determining constitutional questions, courts should not attempt to solve them by reasoning only along the lines of the principles of equity, but the reasoning should be along the lines of the constitution, for it may be that the very object of the constitution is to abandon and cut loose from what had theretofore been regarded as equity in particular cases, or upon a particular subject matter. The question is therefore, not what would be equitable, but what is constitutional. Equity cannot be permitted to override the constitution."

For this third, and final, reason, I feel compelled to reject the Minnesota philosophy of the law.

I hold, in conclusion, that Section 5711.22(B), Revised Code, is void and unenforceable because it (a) imposes an unequal burden of taxation on like personal property, used for the same purpose, owned by taxpayers similarly situated, and engaged in the same types of enterprise; (b) it is a purported classification of taxpayers, not property; and (c) it is based upon an unreasonable and arbitrary classification not having any fair or substantial relation to the object of the legislation— if "classification" is proper in appraising this method of taxation at all—which I doubt, as explained earlier in this opinion.

The defendant may, of course, have exceptions in the Journal Entry on these rulings. Obviously, I would welcome a critical review of my position by the reviewing courts of Ohio in this matter which I regard as one of great public and general interest and one of first impression in this country.

*Judgment ordered in plaintiff's favor.*