LARIO, J.T.C.
Holt Hauling & Warehousing System, Inc. [Holt] appeals from an assessment levied against it by the Director, Division of Taxation [Director] for New Jersey sales and use taxes in the sum of $248,967.53, plus interest for the fiscal years ending June 30, 1981 through June 30, 1984. Holt demands a refund of the principal, which has been paid, and a cancellation of the interest imposed which is unpaid. The Director seeks affirmance of his determination plus judgment for full interest on the assessment.
A pretrial order was entered whereby the sole issue posed by plaintiff and agreed to by defendant was “Whether the Director’s imposition of Use Tax on plaintiff’s materials, equipment and machinery used in the operations of its port facilities and in construction projects for its port facilities is unconstitutional under Art. I, § 10, cl. 2 of the Import-Export Clause of the United States Constitution.” It was further agreed in the pretrial order that the parties would submit a stipulation of facts and that the matter would be determined without trial. In accordance therewith the parties have stipulated:
*448 1. Holt Hauling & Warehousing System, Inc. owns a deep-water port facility/marine terminal in southern New Jersey. The business conducted at this port facility/marine terminal includes the loading and unloading of goods carried by ocean-going vessels. This port facility is used almost exclusively as a hub for export and import traffic through New Jersey.
2. During the assessment period Holt Hauling made substantial expenditures for the acquisition, rehabilitation, reconstruction and expansion of its port facility/marine terminal and for machinery and equipment used in the operation thereof.
3. The materials, machinery and equipment purchased during the assessment period were employed at the port facility/marine terminal in the movement in interstate and foreign commerce of imported and exported goods. These materials, machinery and equipment are owned solely by Holt Hauling, are located solely in New Jersey, and are used by Holt Hauling solely in New Jersey.
4. The New Jersey Division of Taxation imposed New Jersey Sales and Use Tax on Holt Hauling’s purchase of these materials, machinery and equipment during the assessment period.
5. Holt Hauling contends that the property being taxed is used in the import-export stream of commerce and therefore, is exempt under the Import-Export Clause of the United States Constitution, Article I, Section 10, Clause 2.
6. The goods handled by Holt Hauling at its port facility/marine terminal flow in the import-export stream of commerce. Goods handled are stored temporarily at the port facility/marine terminal before they are shipped either abroad or domestically. Normally, the domestic seller or buyer does not have title to goods being exported or imported when they are being loaded or unloaded from the ocean-going vessels at the port facility/marine terminal. .
7. The parties reserve the right to challenge the relevance of any factual material contained in this Stipulation.
Although the goods and merchandise themselves have not been taxed, Holt disputes the Director’s imposition of New Jersey sales ¡and use tax on the basis that the property being taxed is used in the stream of foreign commerce, and therefore, is exempt under the Import-Export Clause of the United States Constitution which directs:
No State shall, without the Consent of the Congress, lay any Imports or Duties on Imposts or Exports, except what may be absolutely necessary for executing its Inspection Laws; and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Control of the Congress. [U.S. Const., Art. I, § 10, cl. 2]
Holt avers that the goods and merchandise handled by it and passing through its facility, which services ships in foreign commerce, are mostly in foreign commerce and the goods are sometimes stored at the facility awaiting shipment to the ultimate consignee. It further claims that, although at other *449 facilities title to the imported goods normally remains in the exporter and is not transferred until the goods leave the terminal, as to goods at its facility title normally transfers from the exporter to the importer prior to the goods’ arrival at the facility and that a portion of the goods imported through this facility are placed into a “bonded warehouse” and are not released until customs duty has been paid thereon which could be several months thereafter.
Holt contends that the United States Supreme Court has held that the prohibitions of the Import-Export Clause are absolute in every respect except for the express exceptions written into it, citing Richfield Oil Corp. v. State Board of Equalization, 329 U.S. 69, 67 S.Ct. 156, 91 L.Ed. 80 (1946), and that a state sales tax imposed on goods which have entered the course of exportation is an unreasonable duty on exports and “it follows that all of the equipment and other personal property used at the port facility are instrumentalities employed exclusively in the foreign Import-Export stream, and equally exempt from imposition of the tax.” Id. at 76, 67 S.Ct. at 160. Holt alleges that the effect of the tax in this case is to impose an impost or duty upon instrumentalities employed in the stream of foreign commerce and as such is unconstitutional.
This theory, advanced by Holt, is contrary to the controlling law, it having been specifically rejected in Canton R. Co. v. Rogan, 340 U.S. 511, 71 S.Ct. 447, 95 L.Ed. 488, 20 A.L.R.2d 145 (1945) and Washington Rev. Dept. v. Stevedoring Assn., 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682, 98 (1978).
In Canton the Court reputiated the “instrumentalities” theory which rejection was followed with approval by the Washington Court wherein it stated:
In Canton ... the Court upheld a gross-receipts tax on a steam railroad operating exclusively within the Port of Baltimore. The railroad operated a marine terminal and owned rail lines connecting the docks to the trunk lines of major railroads. It switched and pulled cars, stored imports and exports pending transport, supplied wharfage, weighted imports and exports, and rented a stevedoring crane. Somewhat less than half of the company’s 1946 gross receipts were derived from the transport of imports or exports. The company contended that this income was immune, under the Import-Export Clause, from the state tax. The Court rejected that argument primarily on the *450 ground that immunity of services incidental to importing and exporting was not so broad as the immunity of the goods themselves. [Footnote omitted]
“The difference is that in the present case the tax is not on the goods but on the handling of them at the port. An article may be an export and immune from a tax long before or long after it reaches the port. But when the tax is on activities connected with the export or import the range of immunity cannot be so wide.
“... The broader definition which appellant tenders distorts the ordinary meaning of the terms. It would lead back to every forest, mine, and factory in the land and create a zone of tax immunity, never before imagined. Id., at 514-515, 95 L.Ed. 488, 71 S.Ct. 447, 20 A.L.R.2d 145 [emphasis in original].” [435 U.S. at 755-757, 98 S.Ct. at 1402-1403]
Were Holt’s rationale to be valid, Holt could not be subject to any taxation, thereby excluding such taxes as corporate business taxes, local real property taxes, and similar type taxes. Such a result is clearly incorrect. •
The prevailing rule to be applied in determining whether a state tax is a prohibited “Impost or Duty” on imports and exports within the meaning of the Constitution is the three-pronged analysis set forth by the Supreme Court in Michelin Tire Corp. v. Wages, 423 U.S. 276, 285, 96 S.Ct. 535, 540, 46 L.Ed.2d 495, 503 (1976), which is not simply a determination of whether the goods are “imports or exports,” but instead, is a functional analysis of the nature of the tax to examine whether it offends any of the three policy considerations that underlie the presence of the constitutional clause:
The Framers of the Constitution thus sought to alleviate three main concerns ... [ 1] the Federal Government must speak with one voice when regulating commercial relations with foreign governments, and tariffs, which might affect foreign relations, could not be implemented by the States consistently with that exclusive power; [ 2] import revenues were to be the major source of revenue of the Federal Government and should not be diverted to the States; and [ 3] harmony among the States might be disturbed unless seaboard States, with their crucial ports of entry, were prohibited from levying taxes on citizens of other States by taxing goods merely flowing through their ports to the inland States not situated as favorably geographically. [Id. at 285-286, 96 S.Ct. at 540-541; footnotes omitted]
Applying this test, the Michelin Court upheld the application of a general ad valorem property tax to imported tires and tubes. In reaching its conclusion, the Court initiated a different approach to the previously primary consideration of whether the tax under review reached imports or exports, as it explained two years later in Washington:
*451 Michelin initiated a different approach to Import-Export Clause cases. It ignored the simple question whether the tires and tubes were imports. Instead, it analyzed the nature of the tax to determine whether it was an “Impost or Duty.” 423 U.S., at 279, 290-294, 46 L.Ed.2d 495, 96 S.Ct. 535 [537, 543-545], Specifically, the analysis examined whether the exaction offended any of the three policy considerations leading to the presence of the Clause____ [435 U.S. at 752, 98 S.Ct. at 1400]
And as stated by Justice Powell in his concurring opinion:
In Michelin ... this Court abandoned the traditional, formalistic methods of determining the validity of state levies under the Import-Export Clause and applied a functional analysis based on the exaction’s relationship to the three policies that underlie the Clause: (i) preservation of uniform federal regulation of foreign relations; (ii) protection of federal revenue derived from imports; and (iii) maintenance of harmony among the inland States and the seaboard States. [Id. at 762, 98 S.Ct. at 1405]
Holt’s argument—that the tax is violative of the Import-Export Clause because to recover the tax paid Holt would be required to pass it on to the shippers who would eventually pass it on to the consumers of the goods—has been previously rejected in Michelin, supra. In that case it was held that to the extent it may increase the cost of goods purchased by consumers, “such taxation is the quid pro quo for benefits actually conferred by the taxing State.” 423 U.S. at 289, 96 S.Ct. at 542.
Plaintiff’s reference to Ramac Explosives, Inc. v. Director, Div. of Taxation, 125 N.J.Super. 154, 309 A.2d 465 (App.Div. 1973), aff’d 64 N.J. 551, 319 A.2d 65 (1974), is entirely misplaced since that case dealt strictly with the interpretation to be placed on the words “refining process” as used in N.J.S.A. 54:32B-8.20. The language quoted by plaintiff was used by the court to explain its theory of the above phrase and has no bearing whatsoever on the issues in the instant case.
Applying the Michelin rationale to the instant case, it is concluded that the New Jersey tax offends none of the three policies that underlie the Import-Export Clause; 1. preservation of uniform federal regulation of foreign relations— Holt’s facility lies entirely within New Jersey; the tax is imposed on purely intrastate transactions; it is not aimed at foreign goods because of their foreign status; and, it has no effect on commercial relations with foreign governments; 2. *452 protection of federal revenue derived from imports—there is no impact on federal import revenues since the use tax is not being levied upon imported construction materials; rather the tax is applied to all goods used in construction; and, 3. maintenance of harmony among the inland states and the seaboard states—the tax is not a mere “transit fee” in that it is not levied upon goods merely flowing through Holt’s port to inland states. The tax applies only to property in New Jersey; it relates reasonably to services provided by New Jersey and it does not discriminate against interior states.
Plaintiff, in its brief, additionally has raised several issues other than its import-export objection. These added issues were not advanced at pretrial nor included in the pretrial order, and therefore, relief thereon may not be granted, R. 8:6-2; R. 4:25-1(b), nevertheless, this court has considered plaintiff’s arguments and finds them to be wholly without merit and rejects them.
The New Jersey sales and use taxes assessed against purchases of items used at Holt’s port facility are not a prohibited impost or duty under the Import-Export Clause of the Constitution, therefore, judgment is directed dismissing plaintiff’s complaint.