CHARLES C. DEUBEL, Jr., AND JEROME FROEHLICH, EXECUTORS UNDER THE LAST WILL AND TESTAMENT OF MAURICE FROEHLICH, DECEASED, PLAINTIFFS-APPELLANTS, v. JOHN A. KERVICK, TREASURER, STATE OF NEW JERSEY, ACTING AS DIRECTOR OF DIVISION OF TAXATION, *ETC.*, DEFENDANT-RESPONDENT.

Argued October 25, 1960—Decided December 20, 1960.

*Mr. Leonard Estrin* argued the cause for plaintiffs-appellants (*Messrs. Deubel and Estrin,* attorneys; *Mr. Leonard Estrin,* of counsel).

*Mr. Joseph A. Jansen,* Deputy Attorney General, argued the cause for defendant-respondent (*Mr. David D. Furman,* Attorney General, attorney).

The opinion of the court was delivered by

WEINTRAUB, C. J. The issue is whether a bequest of a fund in trust for the education of young men desiring to study for the priesthood is *totally* exempt from inheritance tax as a transfer "to or for the use of any educational institution" (*N. J. S. A.* 54:34–4*d*) or is but *partially* exempt as a "trust for an exclusively religious benevolent or charitable use or purpose" (*R. S.* 54:34–2*b*). The Director of the Division of Taxation of the Department of the Treasury found the gift to be but partially exempt and assessed a tax accordingly. The Appellate Division affirmed. 60 *N. J. Super.* 98 (1960). We granted certification. 33 *N. J.* 111 (1960).

The facts are not in dispute. The will bequeaths the residue of the estate to Charles C. Deubel, Jr. in trust to invest for a period of 99 years "and to use the income and interest therefrom for the education of poor worthy Roman Catholic young men studying or desiring to study for the Roman Catholic Priesthood of the Order of Saint Benedict and providing proper maintenance and support for them

during their course of study." The will provides the class of such young men "may be selected by the Abbot of Saint Mary's Abbey of said Order of Saint Benedict of New Jersey or any Committee of Ordained Priests of the Order of Saint Benedict of New Jersey which the said Abbot may appoint." The income is to be held by the trustee in special account entitled "Maurice Froehlich Scholarship Fund." At the expiration of the trust the *corpus* is to be paid over "to the Order of Saint Benedict of New Jersey" without any limitation upon its use.

The Order of Saint Benedict of New Jersey was incorporated by *P. L.* 1868, *c.* 102. The essential objects of the Order as stated in the act of incorporation are "the education of youth and the establishment of churches and conducting of service therein."

The Order operates Delbarton School, Saint Benedict's Preparatory School, both preparatory schools, and also a seminary, all within this State. The preparatory schools instruct in subjects taught in non-sectarian schools and meet the requirements of the State Board of Education. The seminary, situate in Morristown, is devoted to theological instruction for men who have qualified for study for the priesthood. The record reveals that a young man interested in the priesthood is sent, following completion of the usual college preparatory course, to institutions operated by branches of the Order in other states, and upon successful completion of studies there, he enters the seminary at Morristown for theological instruction for a period of four years. The Order pays for the instruction outside New Jersey and provides for all of the needs of those at the seminary. Thus far, the income from the trust has been allocated to students at the seminary.

*R. S.* 54:34–2b deals with transfers "to" religious, benevolent and charitable institutions and organizations or "in trust for an exclusively religious benevolent or charitable use or purpose." It exempts such transfers up to $5,000 and taxes the excess at 5%. This is the provision the

State asserts to be controlling. *N. J. S. A.* 54:34–4*d*, upon which appellant relies, provides for a total exemption of:

"d. That part of the estate of any decedent which passes *to or for the use of* any educational institution  *  *  *  no part of the net earnings of which inures to the benefit of any private stockholder or other individual or corporation; provided, that this exemption shall not extend to transfers of property to such educational institutions of other States, territories and foreign countries which do not grant an equal and like exemption of transfers of property *for the benefit of* such institutions of this State." (Emphasis added)

The pertinent statutory history appears in *Tappan Washington Memorial Corp. v. Margetts,* 9 *N. J. Super.* 212 (*App. Div.* 1950). As was there stated, *N. J. S. A.* 54:34–4*d* was derived from *P. L.* 1925, *c.* 102, which granted total exemption for transfers "to or for the use of any institution solely educational for whose benefit there may have been or may hereafter be appropriations made by the Legislature of this State." The section was then amended by *P. L.* 1948, *c.* 268, to read as quoted above. In the statement attached to the bill which became the statute just cited, the purpose was stated at length:

"The purpose of this bill is to encourage privately endowed higher education by making uniform the exemption from inheritance tax of bequests and devises to all educational institutions not operated for profit. It also avoids the conferring of an unintentional tax exemption, by operation of the present law, in the event that the Legislature should in the future make an appropriation for the benefit of an educational institution under such programs as a veterans' educational aid or for other purposes. Under the present law, exemption is granted where the transfer is for the benefit of any educational institution 'for whose benefit there may have been or hereafter be appropriations made by the Legislature.'

The new language will confine the full exemption of bequests to such institutions as Princeton University, Rutgers University, The State University of New Jersey, the Institute for Advanced Study, Drew University, St. Peter's College, Seton Hall College, Upsala College, John Marshall College, Newark College of Engineering, Stevens Institute of Technology, and other privately-endowed non-profit institutions at the elementary, secondary and higher educational levels in this State, and on a reciprocal basis in other States. These institutions have all found their income from endowment cur-

tailed in recent years, and their additions to endowment restricted by Federal and State death duties which tend to divert to personal beneficiaries sums that formerly were left to educational institutions. The same conditions which require added State aid for public education merit consideration for the needs of privately-endowed institutions which are also a part of the State's total educational facilities.

While bequests to Princeton and Rutgers are already exempt under our law, the reciprocity provision would be helpful to these institutions with respect to bequests by nonresident decedents."

## I.

The State contended and the Appellate Division agreed that "it is the character of the transferee institution and not the use to which the funds are put, educational or otherwise, that determines the impact of *R. S.* 54:34–4, *subd. d*" (60 *N. J. Super.*, at *p.* 102). More specifically, the point was that since the Order has a purpose in addition to the operation of educational institutions, the transfer is beyond the exemption of that section even though the gift is restricted for the use of the educational institutions. This conclusion was found to be required by *Board of National Missions v. Neeld,* 9 *N. J.* 349 (1954).

The situation in *Board of National Missions* is not the one before us. There the gifts were made to a donee without limitation upon their use. The donee in fact was engaged in a number of charitable missions of which the operation of schools was but one. Thus the question was whether a transfer which could be used for purposes other than those of an educational institution came within the statutory exemption. Here, on the other hand, the bequest of income is earmarked for the use of the educational institutions of the Order as we shall presently show.

In *Board of National Missions,* there was no single opinion adopted by a majority of the court. Rather a majority concurred in the result reached in the opinion of Mr. Justice Oliphant. We so note simply to state a fact, without suggesting that the opinion of Mr. Justice Oliphant supports

the judgment under review. On the contrary, we think it does not.

It seems hardly necessary to say that the language a judge employs must be read in the context of the issue before him. The sentence in that opinion upon which the State relies reads that "The statute here involved grants exemption to transfers 'to or for the use of any educational institution' and makes no reference to the purpose for which the fund so transferred is to be devoted" (9 *N. J.*, at *p.* 353). It was simply a statement that the gift must be "to or for the use of" an educational institution, and that the statute does not require a further specification of a particular employment of the gift if the gift is either "to" or "for the use of" such institution. The writer was not there concerned with whether the gift, to qualify for exemption, must be made directly to the institutional entity itself as distinguished from a gift to another for the benefit of the entity. Rather the sole issue was whether a gift to a religious organization which could be used for *any* purpose was exempt because the donee operated a school to the use of which the gift *might,* in the discretion of the donee, be later applied. The opinion concluded (9 *N. J.*, at *p.* 355) :

"* * * A bequest to a Catholic or Episcopalian church or diocese would be taxable as a transfer to a religious organization, whereas a testamentary gift to a particular school operated by the church or diocese would be tax exempt as a transfer to an educational institution. Similarly, a bequest to one of the schools operated by one of the appealing boards would be considered tax exempt as a transfer to an educational institution, but when it is to the boards themselves it must be considered as one to a religious organization. * * *"

Exemptions from taxation are to be strictly construed as *Board of National Missions* states, but of course strict construction does not mean a construction which begrudges. Rather it means an exemption shall not be extended beyond the ascertainable intention of the Legislature and hence an exemption must be denied if a purpose to grant it is doubtful.

■ The statute exempts not only transfers "to" an educational institution but also transfers "to the use of" an educational institution. The phrase "to the use of" must be given some effect, separate and apart from the word "to." The word "use" has many meanings. As a noun, it is accorded 13 significations by *Webster's New International Dictionary* (*2d ed.* 1952). Among them appears "behalf; advantage; benefit; profit." See also 91 *C. J. S., p.* 515. Such is the sense of the word in the statutory phrase. That this is so is evidenced in the statute itself by the phrase "for the *benefit* of such institutions" (emphasis added) which appears in the proviso relating to reciprocity. The Legislature, we believe, there employed "benefit" as a synonym of "use" since there seems to be no reason to adopt a different standard for the purpose of interstate reciprocity. A difference in standards would tend to complicate the efficacy of the reciprocal approach. The statement of purpose attached to the bill also uses the expression "for the benefit of" as the equivalent of "for the use of" in the law as it existed when the bill was introduced. See the last sentence in the first paragraph thereof.

It therefore follows that the educational institution need not be the immediate transferee of the legal title to the fund so long as the gift by its terms is limited to the benefit of a qualifying institution. This interpretation reasonably advances the purpose of the statute as spelled out in the statement quoted above. A contrary view would impede it.

■ We might add that in the quotation above from *Board of National Missions* wherein it was recognized that a gift to a school run by the Board of National Missions would be exempt, it was not suggested that the school must be a separate legal entity, itself capable of receiving the gift directly. On the contrary, since the schools therein described would ordinarily be but a function of the operating corporate entity, we have no doubt that if here the gift went directly to the Order for the use of a school it runs, the transfer would be exempt under the view expressed in that opinion. The

additional circumstance here is that the transfer is in trust to an individual, the income to be paid over. We see nothing significant in that added circumstance so long as the transfer of income is for the benefit of the educational institutions operated by the Order. Again, the purpose of the statutory exemption is equally served whether the institution is the direct recipient or is the beneficiary of a trust to that end. The statutory language "to the use of" embraces a gift in trust. See 5 *Mertens, Federal Income Taxation* (1956), § 31.10. We can think of no reason why the Legislature would have wanted to draw a line upon the basis of the *situs* of legal title.

We do not understand the State to contend that, if its other objections here considered should fail, the transfer nonetheless is beyond the statute for want of sufficient identification of the educational institutions benefited by the transfer. Fairly read, the will limits the scholarships to students at educational institutions operated by the Order, and if we assume it includes as well like institutions operated by branches of the Order in other states, the institutions nonetheless are sufficiently identified to meet whatever requirement of that kind the statute may contain. We add that with respect to such institutions outside the State, the parties stipulated the terms of the reciprocity proviso of the statute are satisfied.

## II.

The State next contends the scholarships are for the benefit of the *individual students* rather than the educational institutions.

The exemption is not limited to gifts which are unrestricted with respect to their employment by or for an educational institution. There is no reason, consistent with the purpose of the statute, for a limitation of that character. Educational institutions doubtless prefer unrestricted gifts for the flexibility they provide to meet needs as they develop, but

for many years restricted giving has been a regular practice of benefactors either to advance the particular phase of the institutional operation they prefer or to provide a memorial for individuals they feel worthy of it. Indeed educational institutions frequently can obtain for a specific purpose gifts which could not be garnered if their identity were lost in the general funds.

The question therefore is whether a gift for scholarships is for the benefit of the school with which they are identified. That a scholarship benefits the student, as obviously it does, does not answer the question. Realistically all gifts to an educational institution benefit the student since the tuition fee rarely equals his *pro rata* share of the total costs. The high role of educational institutions is to train all young men and women worthy of education including those unable to pay for it. Scholarships are so vital a part of the educational program that gifts are solicited for that specific purpose and frequently general funds are devoted to the same end. This is one of the warming facts in the academic scene. We should not strain for construction of the statute which would bear down upon it. Moreover, scholarships serve not only to aid the student but also to attract him. Colleges compete for talent by offers of such aid with an awareness that education is in part the impact of student upon student, and that brilliance among them redounds to the gain of all. We have no doubt that a gift for scholarships is "for the use of" the educational institution with which they are identified. *In re Purington's Estate,* 199 *Cal.* 661, 250 *P.* 657 (*Sup. Ct.* 1926); *In re Munson's Estate,* 54 *Cal. App.* 2d 590, 129 *P.* 2d 420 (*D. Ct. App.* 1942).

*Crane v. Morristown School Foundation,* 120 *N. J. Eq.* 583 (*E. & A.* 1936) is not to the contrary. There creditors of a defunct school sought to reach an endowment fund, the income of which under the resolution establishing the fund was to be used in the discretion of the trustee "for increasing the salaries of Masters and teachers, for providing scholar-

ships to pay the tuition in whole or in part of worthy boys, otherwise unable to secure the opportunities and privileges offered, and/or for any general purposes that may be necessary or desirable" (*p.* 585). The court found the fund was held upon a charitable trust and could not be diverted from the purposes of its creation. In refusing to give effect to an arrangement the creditors claimed an alumni group had made with the receiver of the school, the court held that neither the receiver nor the alumni could defeat the charitable purpose, saying the "real beneficiaries of the fund are the boys who now attend a like school in Morristown and those who in the future will attend such a school. It was for their benefit that the fund was created" (*p.* 591). The court thus spoke of the entire endowment fund, rather than merely of the scholarship phase, and noted the normal attribute of a charitable trust, to wit, that the ultimate beneficiaries are the members of the public for whose aid charities are recognized. Far from suggesting that a scholarship fund is solely for the benefit of the individual recipient, the court, after reciting the several purposes to which the endowment fund could be devoted under the resolution establishing it, including the purpose of "providing scholarships," commented that "This resolution clearly discloses a purpose to provide a permanent endowment, the income from which was to be used *for school purposes*" (*p.* 585, emphasis added).

The testimony shows the Order, as a matter of principle, refrains from informing any student of the fact that he is a recipient of scholarship aid, and further that the total needs of the student would be met from one source or another if the testator had not made the bequest here involved. Both parties seem to find strength in these facts for their respective positions. We think they do not cut either way.

## III.

Finally, and apparently for the first time before us, the State urges that no tax was levied upon the transfer

despite the assessment made. The point, as we understand it, arises upon these facts: Since there is a gift of income for a term, here 99 years, the commuted value of the gift of income for the term was computed and then deducted from the appraised value of the property, pursuant to *R. S.* 54:36–2 and 3. The balance was the value of the remainder interest, and since that balance was less than $5,000, it was not taxed because of the exemption in that amount accorded by *R. S.* 54:34–2*b,* referred to above. Hence after 99 years the Order will receive the full *corpus* without any tax upon it. Expressed in other words, the State says the tax was only against the income.

We can see no connection between the statutory direction for the valuation for taxation of the several interests in a transfer and the subject of exemption. The State's position boils down to the proposition that the Legislature intended to exempt only transfers of absolute interests and to tax transfers of income. There is no basis for the distinction and we find no warrant for it in the statute. A gift of income fits perfectly within the phrase "to the use of."

The judgment of the Appellate Division is accordingly reversed, the assessment in question is vacated, and payment made is ordered to be refunded.

*For reversal*—Chief Justice WEINTRAUB, and Justices FRANCIS, PROCTOR, HALL and SCHETTINO—5.

*For affirmance*—None.