CRABTREE, J. T. C.
This is a local property tax case wherein plaintiff seeks review of a judgment of the Essex County Board of Taxation upholding defendant’s denial of exemption to plaintiff’s property for tax year 1980.
At issue is plaintiff’s entitlement to an exemption for the subject property as a parsonage within the meaning of N.J.S.A. 54:4-3.6, notwithstanding that a portion thereof was demised to a third party for nonexempt purposes.
Plaintiff is a religious corporation organized pursuant to the provisions of N.J.S.A. 16:1-1 et seq.
The property in question, located at 166 Upper Mountain Avenue in defendant taxing district, is comprised of approximately three acres of land, upon which two buildings have been erected. One of those buildings is a detached single-family dwelling, containing over 9,000 square feet of living area, which, at all times here pertinent, served solely as the residence of Reverend Irving Lisath, plaintiff’s presiding elder, and his family. The other building is a carriage house, converted to a three-car garage and a second-floor apartment. Both the land and the two structures erected thereon comprise a single tax lot (Block 504, Lot 6).
Plaintiff purchased the property in 1977 but soon found the upkeep expenses of the large dwelling financially burdensome. To the end of alleviating such burden plaintiff, in or about December 1979, rented the apartment over the carriage house to an unrelated third party for $460 a month. The tenant occupied the apartment as a dwelling, and his use and occupancy thereof were unrelated to any exempt purpose. The net income from the apartment rental was used to defray the expenses of maintaining the large dwelling.
*622 The annual contributions of plaintiff’s members averaged $89,000. Plaintiff’s annual operating budget approximated $98,-000.
The parties agree that Reverend Lisath was an officiating clergyman, as that phrase is used in N.J.S.A. 54:4-3.6. Moreover, I find from the credible evidence that the large dwelling house in which Reverend Lisath and his family resided was a parsonage within the meaning of that statute.
Plaintiff contends that, since the net income from the carriage house apartment was not diverted to nonexempt uses, the right to exemption is not lost by reason of the apartment rental. Plaintiff urges, in the alternative, that it is entitled, at the least, to a partial exemption for the large dwelling house and a suitable portion of the total land.
Defendant contends that the rental of the carriage house to an unrelated third party disqualified the entire property, land and improvements, from entitlement to property tax exemption.
To begin with, I conclude that the use and occupancy of a portion of the carriage house by a third party, unrelated to the religious purposes of the plaintiff owner, vitiates plaintiff’s exemption claim for the carriage house and the land appurtenant thereto. Actual land and building use must be for one of the charitable, benevolent or religious purposes enumerated in the exemption statute. Boys’ Club of Clifton, Inc. v. Jefferson Tp., 72 N.J. 389, 371 A.2d 22 (1977). Remaining for consideration is the effect of such nonexempt use on the exempt status of the balance of the property.
The relevant statute is N.J.S.A. 54:4-3.6, which exempts from property taxation “the buildings, not exceeding two, actually occupied as a parsonage by the officiating clergymen of any religious corporation of this State, together with the accessory buildings located on the same premises; the land whereon [such] buildings ... are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed 5 acres in extent; . ... ”
*623 Thus, it will be seen that, to be accorded tax exemption as a parsonage, the property must satisfy five tests: (1) the building (or buildings) must be occupied by an officiating clergyman of a religious corporation organized in New Jersey, (2) no more than two buildings (plus accessory structures) are eligible, (3) the land must be exclusively devoted to the use of the parsonage buildings, (4) the land area may not exceed five acres and (5) only that part of the land necessary for the fair enjoyment of the buildings is entitled to exemption, though such part be less than five acres.
The first test is of the all-or-nothing variety, i.e., if the improvement is not the residence of an officiating clergyman, the property does not qualify for exemption absent a showing that it is exclusively devoted to other religious purposes of the owner. Cresskill v. Northern Valley Evangelical Free Church, 125 N.J.Super. 585, 312 A.2d 641 (App.Div.1973); Trenton Church of Christ v. Trenton, 3 N.J.Tax 267 (Tax Ct.1981). The second, fourth and fifth tests impose numerical and size limitations upon the extent of the exemption. No more than two buildings may be exempt, and only so much of the land, not in excess of five acres, as is necessary for the fair enjoyment of the structures is exempt. The phrase, “necessary for the fair enjoyment thereof”, as used in the operative statute and its predecessor enactments, has been construed to mean that which is reasonably necessary to accomplish the charitable, benevolent or religious purposes to which the building is devoted. Boys’ Club of Clifton, Inc. v. Jefferson Tp., supra; Cooper Hospital v. Camden, 68 N.J.L. 691, 54 A. 419 (E. & A. 1903).
The third test, viz., that the land be devoted exclusively to exempt purposes, must be read in the context of the tests imposing the aforementioned numerical and size limitations; that is to say, so much of the land as is exclusively devoted to exempt purposes is exempt; the balance of the land is subject to tax. Thus, in Congregation St. Vincent de Paul v. Brakeley, 67 N.J.L. 176, 50 A. 589 (Sup.Ct.1901), the court concluded that, while the building was devoted to charitable or religious pur *624 poses and thereby entitled to exemption, there remained to be established the portion of the 231 acres that was required for the fair enjoyment of the building. The court thereupon concluded that an apportionment was called for between the exempt and nonexempt parts of the land, to be determined by further evidence or by the agreement of the parties.
It is thus evident that the Legislature intended to grant tax exemption to property devoted to the uses and purposes enumerated in the statute, subject to specified restrictions as to land area and the number of structures. It was not the intent of the statute to deny exempt status in toto to land and buildings devoted to qualifying uses and purposes where the statutory size and numerical limitations are exceeded. Accordingly, where a given structure, together with the land appurtenant thereto, is devoted exclusively to exempt purposes, a disqualifying use of another building and land not reasonably required for the uses of the first structure does not vitiate the exemption to which the latter is otherwise entitled. While exemption statutes are strictly construed against exemption claimants, Princeton Univ. Press v. Princeton, 35 N.J. 209, 172 A.2d 420 (1961), the principle of strict construction must never be permitted to defeat the evident legislative design. Princeton Tp. v. Tenacre Foundation, 69 N.J.Super. 559, 174 A.2d 601 (App.Div. 1961). Strict construction does not mean a construction that begrudges; it simply means that exemption is not extended beyond the ascertainable legislative intention. Deubel v. Kervick, 33 N.J. 568, 166 A.2d 561 (1960).
The larger structure, exclusively occupied by Reverend Lisath and his family, constitutes a parsonage within the meaning of N.J.S.A. 54:4-3.6 and is entitled to exemption thereunder. The carriage house is not exempt. It remains for the parties to agree (a) on the quantum of land necessary for the enjoyment of the parsonage and (b) the allocation of the improvements assessment between the parsonage and the carriage house, thence to allocate the total assessment between exempt and nonexempt property. Failing agreement, the court will hear further evidence in aid of such allocations.
*625 Entry of judgment will be deferred pending the aforementioned allocation by agreement or proofs in accordance with R. 8:9-3.