125 N.J. Super. 154 (1973)
309 A.2d 465
RAMAC EXPLOSIVES, INC., PETITIONER-RESPONDENT, AND NEW JERSEY CRUSHED STONE ASSOCIATION, INC., INTERVENOR-RESPONDENT,
v.
DIRECTOR, DIVISION OF TAXATION, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 2, 1973.
Decided September 24, 1973.
*155 Before Judges FRITZ, LYNCH and TRAUTWEIN.
Mr. Herbert K. Glickman, Deputy Attorney General, argued the cause for appellant (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
Mr. Thomas R. Curtin argued the cause for petitioner-respondent (Messrs. Lafferty, Rowe, McMahon & McKeon, attorneys).
Mr. Morris M. Schnitzer argued the cause for intervenor-respondent (Messrs. Schnitzer & Schnitzer, attorneys).
The opinion of the court was delivered by LYNCH, J.A.D.
This is an appeal by the Director of the Division of Taxation from a judgment of the Division of Tax Appeals holding that sales of dynamite to stone quarries are exempted from the New Jersey Sales and Use Tax Act (N.J.S.A. 54:32B-1 et seq.) pursuant to the exemption set forth in N.J.S.A. 54:32B-8(t).
Respondent Ramac Explosives, Inc. was assessed by the Director for the amount of sales taxes it failed to collect upon its sales of dynamite to certain stone quarries. Ramac filed a petition with the Division of Tax Appeals which reversed the Director's determination and held that the sales of dynamite by Ramac were exempted from the sales tax. A judgment was entered in favor of Ramac.
Meanwhile, intervenor-respondent New Jersey Crushed Stone Association, Inc., an organization comprised of stone quarries in New Jersey, had instituted a declaratory judgment action in the Chancery Division to determine whether *156 explosives used in quarrying operations were exempted from the sales tax. The decision of the Division of Tax Appeals in favor of Ramac was rendered before the Association's case proceeded to trial. Accordingly, the Association and the Director jointly moved that the Association be permitted to intervene in the pending appeal involving Ramac. The court granted the motion permitting the Association to intervene and, retaining jurisdiction, remanded the case to the Division of Tax Appeals in order that the Association could present additional evidence. Following the remand hearing, supplemental findings of fact and conclusions of law were rendered and filed. The holding that sales of dynamite to stone quarries were exempt was sustained. This appeal followed.
N.J.S.A. 54:32B-8(t) allows exemption from retail sales taxation as to:
(t) Sales of materials, such as chemicals and catalysts, used to induce or cause a refining or chemical process, where such materials are an integral or essential part of the processing operation, but do not become a component part of the finished product; * * *.
Concededly, within the meaning of that section, dynamite is a "material" and a "chemical." As such it is an "integral or essential part" of blasting which is a "processing operation." And dynamite does "not become a component part of the finished product." There remains for determination the issue as to whether dynamite, in a quarry-blasting operation, is "used to induce or cause a refining or chemical process."
The evidence is undisputed that dynamite does not produce a chemical effect upon the ledge rock which it dislodges in blasting. It follows, therefore, that dynamite does not induce or cause a "chemical process." The finding of the judge of the Division of Tax Appeals to that effect, supported by credible evidence, must therefore stand.
There is left only the issue as to whether dynamite is used to induce or cause a "refining * * * process." This, in *157 turn, reduces the relevant question as to whether blasting in a stone quarry is a "refining process."
To "refine" is "1. To reduce to a fine, unmixed or pure state; separate from extraneous matter * * *." Webster's Third New International Dictionary 1908 (1966). N.J.A.C. 18:24-4.2, adopted under the Sales and Use Tax Act, defines "refining" as: "`Refining' means the making fine or pure or partially free from extraneous or undesirable matter."
The Division of Tax Appeals judge found:
* * * in its natural state ledge rock is intermingled with soil, clay alteration, decomposed materials, tree roots and other materials. The use of explosives in blasting the ledge rock refines the rock formation by separating it from these impurities, thus refining the rock by improving its quality; second the blasting, coupled with mechanical crushing yields crushed stone, a refined version of ledge rock, for sale by the quarry operations.
Except for the use of the words "refines," "refining" and "refined" in said quotation  which in our view "begs the question"  we adopt the substance of the judge's findings. The evidence amply supports the finding that, in its natural state, ledge rock is intermingled with soil, clay, decomposed materials, tree roots and other materials, and that blasting separates the rock from these "impurities." We would add the obvious, that blasting removes the stone from the ledge, and thus, within the definition concept, it "separate[s]" the stone from "extraneous matter." Further, blasting reduces the ledge rock to a manageable and commercially useful size and quality so that the resulting stone may meet specifications established by various customers, such as the Department of Transportation for road building. In that sense, too, we regard blasting as a "refining" process just as many examples of "refining," cited in Webster, supra, are processes used to prepare the product for the desired ultimate use.[1]
*158 We further consider that the language of N.J.S.A. 54:32B-8(t) to the effect that the exempt materials must "not become a component part of the finished product" as significant in determining the legislative intent. We read the language as an attempt to avoid double taxation of (a) materials which are consumed in the blasting process (dynamite) and (b) the end product (stone) which, of course, is taxed upon sale but no longer contains that material. In our view, the pattern of the act is to tax only the end product of a process. Thus N.J.S.A. 54:32B-2(e) excludes from the definition of a "retail sale" subject to taxation a sale of tangible property which is a "component part of a product produced for sale by the purchaser," or "where the property so sold becomes a physical component part of the property upon which [certain] services" subject to taxation under the act are performed. In those instances the legislative intent is expressed that only the end product, and not what "went into" its production, is subject to tax. We would apply a like legislative intent to N.J.S.A. 54:32B-8(t) when applied to the sale of dynamite for use in producing stone as the end product in the blasting of a quarry.
The judgment of the Division of Tax Appeals is affirmed.
NOTES
[1] "Refine: * * * to free or cleanse from impurities (sugar): to give a final mechanical treament to (paper stock) so as to put it in the best possible condition for the grade of paper being made: to prepare (pulp screenings) for manufacture into coarse paper: * * * to subject (raw sugar) to a series of processes (as defecation or carbonation, filtration through bone black or activated carbon, and crystallization) to produce white sugar * * *." Webster's Third New International Dictionary 1908 (1966).