RAMAC EXPLOSIVES, INC., RESPONDENT-RESPONDENT, AND NEW JERSEY CRUSHED STONE ASSOCIATION, INC., INTERVENOR-RESPONDENT, v. DIRECTOR, DIVISION OF TAXATION, APPELLANT.

Argued March 4, 1974—Decided May 7, 1974.

*Mr. Herbert K. Glickman,* Deputy Attorney General, argued the cause for appellant (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

*Mr. Morris M. Schnitzer* argued the cause for intervenor-respondent (*Messrs. Schnitzer & Schnitzer,* attorneys).

*Mr. Thomas R. Curtin* argued the cause for respondent (*Messrs. Lafferty, Rowe, McMahon, McKeon & Weigel,* attorneys).

PER CURIAM. We affirm the judgment of the Appellate Division substantially for the reasons set forth in its opinion reported in 125 *N. J. Super.* 154 (1973) except that we withhold our approval of that part of the opinion which states that the pattern of the New Jersey Sales and Use Tax Act (*N. J. S. A.* 54:32B–1, *et seq.*) "is to tax only the end product of a process." This statement may be too broadly put and in any event was unnecessary to the court's conclusion.
Affirmed.

PASHMAN, J., (dissenting). The majority concludes that while dynamite utilized for rock blasting is a "chemical" or "catalyst," it does not induce or cause a "chemical process" within *N. J. S. A.* 54:32B–8(t), exempting from sales taxation materials "* * * used to induce or cause a refining or chemical process * * *." I agree. The question, then, is whether blasting in a stone quarry is a "refining process."

The majority has chosen to construe the word "refining" in a broad inclusive sense rather than adopting the more restrictive meaning urged by the Director. The word "to refine" is defined in Webster's Third New International Dictionary 1908 (1971):

to reduce to a fine, unmixed, or pure state: separate from extraneous matter * * *.

The definition lends context to the meaning by setting forth various illustrations of those materials which have undergone some sort of chemical change, not a mere physical transformation.

The word "refining" is defined as follows:

[T]he action or process of removing impurities from a crude or impure material: as (a) *of metals*: subjection to high heat or other purification methods (as electrolysis or treatment with chemicals) * * * (b) *of glass*: * * *(c) *of sugar*: processing in a series of steps ending with crystallization (d) *of petroleum*: fractional distillation usually followed by other processing (as cracking).

The dictionary examples adopted by the majority opinion refer to a process in which the final products differ chemically from the initial components. Selective blasting physically alters the size and composition of rock. The stone is reduced in size and partially separated from soil, clay and other extraneous organic material. But the rock has not undergone any chemical change as the definitive illustrations seem to require. The end product is exactly the same. In ordinary language usage, it is most unusual to think that a mountain is being "refined" during blasting.

The majority has so strained its interpretation of *N. J. S. A.* 54:32B–8(t) that the statute has lost its intended limitations and its force. Instead of limiting the term "refining process" to its ordinary meaning — a process in which the end products differ chemically from the initial components, *i. e.*, refining of petroleum and iron ore — the

majority has adopted an expansive meaning unjustified by the Legislature's use of the phrase.

There is no case law in New Jersey which defines the term "refining process." Other jurisdictions, however, have held that a purely physical separation process, as in the blasting of rock in a quarry, does not constitute refining. For example, in *Cleveland Cliffs Iron Company v. Glander,* 145 *Ohio St.* 423, 62 *N. E.* 2d 94 (Sup. Ct. 1945), the taxpayer mined iron ore in both open pit and underground mines. After the ore was extracted from the earth, the taxpayer performed certain operations in which foreign material, lean ore and rock were sorted out, the ore was crushed and then the ore was washed to remove the free silica. The taxpayer alleged that its property was subject to a lower rate of taxation since it was used in a refining operation. The court rejected this contention and held that this process did not constitute refining. The Ohio court noted that "the mere separation and removal of free silica from the iron ore, which thereby leaves the ore higher in iron and lower in silica," does not constitute refining.

Further light can be shed on the phrase when examining another statute containing similar language. In a former exemption, *N. J. S. A.* 54:32B–8(m)(1), which was subsequently deleted by *P. L.* 1970, *c.* 7, § 5, the Legislature defined the exemption of machinery used in the production of tangible personal property to include not only "refining" but also "manufacturing," "processing" and "assembling." The former exemption could have included an operation involving a purely physical process. However, the Legislature in enacting *N. J. S. A.* 54:32B–8(t) restricted the exemption to include only a "refining or chemical process." It omitted the words "manufacturing," "processing" and "assembling." The Legislature clearly wanted an even more restrictive exemption.

The parties agree that *N. J. S. A.* 54:32B–8(t) was included in the 1966 law without discussion as to the scope of the exemption. Hence there is no legislative history concern-

ing the enactment of this statute. But an examination of the transcript of the public hearing on June 8, 1972, before the Assembly Taxation Committee then considering the Governor's tax reform bills, is most significant. The Tax Policy Committee examined the possible imposition of new taxes other than a State income tax. In that portion of the report pertaining to the Sales and Use Tax and the aforementioned exemption, the recommendation was made to retain said exemption with modifications. It was clearly indicated that the Section 8(t) exemption was intended to apply to catalysts used in chemical refining operations such as petroleum refining. *Report of the 1972 Tax Policy Committee* at 74. The recommendation of the Committee was to restrict the exemption to catalysts having useful lives of more than one year. This is characteristic of the catalysts used in the refining of petroleum. The useful life of dynamite is measured in terms of seconds. I recognize that the Tax Policy Committee Report of 1972 does not constitute legislative history concerning a statute enacted in 1966, but it is significant and revealing.

The majority has withheld approval of that part of the Appellate Division opinion which states that the pattern of the New Jersey Sales and Use Tax Act (*N. J. S. A.* 54:32B–1, *et seq.*) "is to tax only the end product of a process."

My examination of that Act leads me to conclude that its general intent is to tax the receipts from every retail sale of tangible personal property (except as specifically provided by statute), rather than to tax only the end product of a process. *Mal Brothers Contracting Company v. Director, Div. of Taxation,* 124 *N. J. Super.* 55 (App. Div. 1973), certif. den. 63 *N. J.* 554 (1973).

In the main, property must bear its just and equal share of the public burden of taxation. For the government to function, taxes must be assessed and received. Statutes granting an exemption from taxation represent a departure from these rules and, therefore, must be strictly construed against any claim for exemption. *Town of Bloomfield v.*

*Academy of Medicine of New Jersey,* 47 *N. J.* 358 (1966); *Princeton Univ. Press v. Borough of Princeton,* 35 *N. J.* 209 (1961). The burden of proving a tax-exempt status is upon the claimant. *Trenton v. Div. of Tax Appeals,* 65 *N. J. Super.* 1, 5–6 (App. Div. 1960); *Jamouneau v. Division of Tax Appeals,* 2 *N. J.* 325, 330 (1949).

Substantial revenues are produced by this tax. Serious limiting effects upon those revenues can result from the pattern of the tax as enunciated by the Appellate Division. By failing to restrict the term "refining process" to its ordinary meaning, the exemption will be impermissibly diluted beyond the intent of the Legislature. The burden of proving a tax-exempt status has not been borne by the claimant.

I would reverse the judgment of the Appellate Division.

*For affirmance* — Chief Justice HUGHES and Justices JACOBS, MOUNTAIN, SULLIVAN and CLIFFORD—5.

*For reversal* — Justice PASHMAN—1.