176 N.J. Super. 620 (1980)
424 A.2d 470
GRINDING BALLS, INC., PLAINTIFF,
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT.
Superior Court of New Jersey, Tax Court of New Jersey.
September 26, 1980.
*621 William B. Hutchinson, for plaintiff.
John J. Degnan, Atty. Gen., Harley A. Williams, Deputy Atty. Gen., for defendant.
LARIO, J.T.C.
This is an appeal from a determination of the Division of Taxation levying a sales tax of $2,073.26 on sales of plaintiff's products. Plaintiff paid the tax and now claims a refund plus interest from the date of payment, contending the taxes assessed were exempt under N.J.S.A. 54:32B-8(t).
Grinding Balls, Inc. is a foundry engaged in the manufacture and sale of metal grinding balls which are used primarily in such industries as the paint, cement and coal businesses. Their function is to reduce by a grinding process the size of certain materials into a powdery form.
The balls are described as Ni-Hard metal balls made of cast-iron, nickel, chromium, magnesium, silicon and carbon. The combination of these ingredients makes the resulting metal extremely hard and resistant to wear. They are manufactured in various sizes from one-half inch in diameter for the paint grinding industry to four inches for the cement grinding business.
The purchasers use the balls to grind certain materials such as limestone, magnasite, titanium-oxide, carborundum and paint pigments into a powder.
*622 The balls are placed into a mill or tumbling machine, the materials to be produced are added, and a tumbling process is instituted.
The size of the particles involves are reduced by having two balls coming together in the revolving mill and crushing the particles. The mills turn only about 18 to 21 revolutions per minute which is below what is called the critical speed. The balls are lifted up by lifter bars located on the side of the mill, then they cascade and roll down on each other. The material that is enclosed also rolls; it is crushed; and, eventually, is reduced to its powdered size. If the mills spin above the critical speed, the ball sticks to the side of the surface by centrifugal force.
In the example of its use by the cement industry, the particles that go into the mill are granular, probably the size of a walnut or an acorn. They are first ground with large grinders, probably steel balls (not plaintiff's Ni-Hard) and the finished grinding is done with the use of plaintiff's Ni-Hard balls.
In the paint industry, bags of rough pigment (mined ore of different metals which has been crushed and reduced to the size of grapenuts-used to give color to the paint) are placed in a batch-type mill and mixed with oils and solvents. This mixture is then ground by the balls in the batch for a period of 18 to 24 hours reducing the particles to a very fine contained powder.
The balls are also used to grind soft coal in connection with steam generators. Lumps of soft coal are placed in a mill with balls mixed therein. The soft coal is then ground and the dust therefrom is blown into steam generators.
In all of the uses, the balls become a part, very minutely, of the product they are grinding. The balls used in a cement mill will last two to four years; the part that is worn very slowly wears itself off into the cement. The balls have a similar life span in the grinding of carbon and coal; however, in a paint mill the balls last for a substantially longer period of time.
*623 Plaintiff relies upon N.J.S.A. 54:32B-8(t), which allows exemption from retail sales taxation and reads as follows:
Receipts from the following shall be exempt from the tax on sales imposed under subsection (a) of section 3 and the use tax imposed under section 6:
* * * * * * * *
(t) Sales of materials, such as chemicals and catalysts, used to induce or cause a refining or chemical process, where such materials are an integral or essential part of the processing operation, but do not become a component part of the finished product.
Within the meaning of section (t) grinding balls are an "integral part" of the grinding of paint pigment or cement particles which is a "processing operation." Although part of the balls wear off very minutely into the paint or cement, its inclusion is so infinitesimal it does not become "a component part of the finished product."
A grinding ball concededly is not a chemical therefore, to be decided is (1) whether a grinding ball is a material such as a "catalyst"; and if so, (2) whether it is used to induce a "refining or chemical process".
Webster's Third New International Dictionary (1966) defines "catalyst" as:
1. a substance that brings about catalysis and that may or may not take part chemically in the reaction; broadly: any substance (as an enzyme) that initiates a reaction and enables it to take place under milder conditions (as at a lower temperature) than in the absence of the catalyst.
and "catalysis" as:
1. the change in the rate of a chemical reaction brought about by often small amounts of a substance that is unchanged chemically at the end of the reaction; specif: acceleration of a reaction (as the oxidation of sulfur dioxide to sulfur trioxide in the presence of platinized asbestos).
The Random House Dictionary of the English Language, (1970) defines "catalysis" as: "1. the causing or accelerating of a chemical change by the addition of a substance which is not permanently affected by the reaction."
In the use made of grinding balls there is no addition of any substance which causes or accelerates a chemical change. It is clear from the above definitions that grinding balls are not *624 catalysts. This conclusion is buttressed by the technical definition of "catalyst" which is defined in The Condensed Chemical Dictionary (8th ed. 1971), ed. Gessmer G. Hawley, as "Any substance of which a fractionally small percentage strikingly affects the rate of a chemical reaction..." "Catalysis" is defined as "a modification and especially an increase in the rate of the chemical reaction induced by material unchanged chemically at the end of the reaction."
Grinding balls do not modify or increase the rate of the chemical reaction; in fact, there is no chemical reaction. The function of grinding balls is to reduce the size of the materials being ground-strictly a physical process. Since the balls neither affect the rate of a chemical reaction nor are involved in a chemical reaction, grinding balls cannot be considered a "catalyst".
Even if grinding balls were deemed to be "catalysts" within the meaning of Section "t", plaintiff's claim must be denied because grinding balls are not "used to induce or cause a refining or chemical process". Unquestionably the grinding of paint pigments, cement and other particles into a powdered form, as previously noted, is strictly a physical process and it does not induce or cause a chemical process.
Remaining is the question whether grinding of these particles constitutes a "refining process". A regulation adopted under the Sales and Use Tax Act (N.J.A.C. 18:24-4.2) defines "refining" as: "Refining means the making fine or pure or partially free from extraneous or undesirable matter".
The sole case in this State dealing with the interpretation of Section 8(t) is Ramac Explosives, Inc. v. Director, Division of Taxation, 125 N.J. Super. 154 (App.Div. 1973) affirmed 64 N.J. 551 (1974). In Ramac the material sought to be exempted was dynamite sold to stone quarries for the purpose of extracting the stone. Unlike the instant case dynamite was found by the court to be a "chemical" or "catalyst". However, it was agreed that dynamite did not induce or cause a "chemical process", as in *625 the present case, therefore, the question posed therein was whether blasting in a stone quarry is a "refining process". The court affirmed the Division of Tax Appeal's finding of fact that dynamite blasting separates the rock from impurities of soil, clay, decomposed materials, tree roots and other materials intermingled with it, and its conclusion that this separation constituted a refining process.
In its Appellate Division opinion, which was adopted by the Supreme Court, the following definition of "refine" was given: "To `refine' is `1. To reduce to a fine, unmixed or pure state; separate from extraneous matter ..." Webster's Third New International Dictionary 1908 (1966).
Although some definitions of "refining" are stated to be processes used to reduce in size in preparing the product for its desired ultimate use, regulation N.J.A.C. 18:24-4.2 restricts the definition of "refining" as used in Section (t) to a process in which the final product differs chemically from the initial components which includes the process of removing impurities from a crude or impure material.
In the metal industry, "refine" means removal of undesirable matter in ore or metal. Armco Steel Corp. v. State Tax Commission, 155 A.2d 678, 221 Md. 33 (1959). Mere separation and removal of free silica from iron ore was not considered "refining". Cleveland-Cliffs Iron Co. v. Glander, 145 Ohio St. 423, 62 N.E.2d 94 (1945). The use of filter in removing particles and not changing the constituent elements in any respect, is not "refining". Mayes v. Paul Jones & Co., 270 F. 121 (1921). In General Crude Oil Co. v. Department of Energy, 585 F.2d 508 (1978), the facts were that the operator blended substances, the blending and treating were rudimentary and not complex and sophisticated. The court held that there was no "refining" since the chemical change was insubstantial.
The instant case differs from Ramac, supra, in that here no extraneous matter is removed from the particles ground. The grinding of particles into a powdery state does not remove any *626 impurities from the initial component nor does it produce a final product that differs chemically. The action of grinding balls as used by its purchasers is nothing more than that achieved by the use of a pestle and mortar, a pepper mill or a sledgehammer. Surely, the use of those household items could not properly be referred to as a "refining process". The mere physical reducing of a material to a powdered form does not constitute a "refining process" within the meaning of N.J.S.A. 54:32B-8(t).
Accordingly, the exemption granted by Section (t), supra, does not apply to the sale of plaintiff's Ni-Hard grinding balls. Judgment will be entered denying plaintiff's application for a refund.