CONLEY, J. T. C.
The issue in this case is whether purchases of certain cloth filter pads used by plaintiff in its manufacturing process are exempt from imposition of the New Jersey Sales and Use Tax. Plaintiff has appealed from two separate assessments made by the Director of the Division of Taxation relating to the purchase of the filter pads during the period from January 1,1973 to June 30, 1979. The assessments total $21,813.49 plus interest and penalties.
Plaintiff’s principal business is the manufacture of cellulose acetate film and sheet for uses such as sound recording tape, audio-visual tape, microfilm and acetate binders. Its manufacturing process was described in detail at trial by its plant manager, who is a chemical engineer. The process begins when plaintiff purchases cellulose acetate from its supplier in the form of a white flake-like material. This material is derived from wood pulp that has undergone a chemical reaction in which the acetyl groups of molecules are substituted for the hydroxyl groups of molecules in the cellulose fiber. In the first stage of plaintiff’s manufacturing process, depending upon what product is to be made, various amounts of plasticizers, solvents, stabilizers and processing aids are mixed with the white flake to produce a cellulose acetate solution. The solution at this point contains impurities and contaminants from the additives as well as extraneous materials of unacetylated flake. The last-named is flake which, when purchased from plaintiff’s supplier, contained materials that had not undergone a complete chemical reaction. Any of these factors can create inclusions or gels in *88 the cellulose acetate solution that would render the acetate film and sheet products defective and commercially unusable.
The critical stage in plaintiff’s manufacturing process is filtration, during which the solution is passed through two sets of filter presses. The presses contain the cloth filter pads with respect to which the Director’s assessments were made. The filtration process includes both a rough clarification and a final clarification of the solution. The filter pads retain any impurities, contaminants and extraneous matter after the cellulose acetate solution has been pumped through the pads. The final stage of plaintiff’s manufacturing process takes place when the filtered solution is cast onto highly polished drums whose speed and temperature are regulated to control the shape and thickness of the final product.
Plaintiff’s claim that its purchases of filter pads are exempt from sales tax is based upon the following statutory language:
Receipts from sales of materials, such as chemicals and catalysts, used to induce or cause a refining or chemical process, where such materials are an integral or essential part of the processing operation, but do not become a component part of the finished product are exempt from the tax imposed under the Sales and Use Tax Act. [NJ.S.A. 54:32B-8.20[1]]
The parties have stipulated that the cloth filter pads are an integral and essential part of the processing operation and that they do not become a component part of the finished product. Therefore, the question left to be resolved is whether the filter pads are included within the phrase “materials, such as chemicals and catalysts, used to induce or cause a refining or chemical process.... ”
The parties first disagree as to the meaning of the words, “materials, such as chemicals and catalysts.” Plaintiff argues that the controlling word is the more general “materials,” whereas defendant argues that the controlling words are the more specific “chemicals and catalysts.” Neither of the two reported opinions interpreting this statutory language dealt *89 with this issue. In Ramac Explosives, Inc. v. Taxation Div. Director, 125 N.J.Super. 154, 309 A.2d 465 (App.Div.1973), aff’d but modified, 64 N.J. 551, 319 A.2d 65 (1974), it was conceded that dynamite was both a “material” and a “chemical” so that there was no need for the court to determine whether a “material” had to be a chemical or catalyst. In Grinding Balls, Inc. v. Taxation Div. Director, 176 N.J.Super. 620,1 N.J.Tax 514, 424 A. 2d 470 (Tax Ct. 1980), the court held that metal grinding balls (used primarily in the paint, cement and coal businesses to reduce the size of certain materials into a powdery form) were neither chemicals nor materials such as catalysts. The court was not asked to determine whether the term “materials” was broader than the term “chemicals and catalysts.” However, the court made clear that it would have denied the exemption sought by the taxpayer even if it had found the grinding balls to be catalysts because the grinding balls were not “used to induce or cause a refining or chemical process.” Id. at 518, 424 A.2d 470.
It is my conclusion from a reading of N.J.S.A. 54:32B- 8.20 that the Legislature intended that materials need not be chemicals or catalysts to be exempt from tax as long as they are “used to induce or cause a refining or chemical process.” In enacting this exemption the Legislature used commas to set off the words “such as chemicals and catalysts” from the term “materials.” The punctuation is part of the statute and obviously may be considered in its interpretation. Moore v. Magor Car Corp., 27 N.J. 82, 87, 141 A.2d 536 (1958). It is an elementary rule of grammar that commas are used to set off nonrestrictive appositives, which are nouns that immediately follow and provide additional but nonessential information about another noun in the sentence. Leggett, Mead and Charvat, Prentice-Hall Handbook for Writers (5 ed. 1970), 124-125. In N.J.S.A. 54:32B-8.20, the Legislature not only set off the words “chemicals and catalysts” with commas but also introduced the words with the phrase “such as,” which means “for example.” The American *90 Heritage Dictionary of the English Language (1969). It is unnecessary to consider in this opinion what other items might qualify as “materials, such as chemicals and catalysts.” It is sufficient to hold that the cloth filter pads involved here could be such materials, provided they are “used to induce or cause a refining or chemical process.”
The remaining dispute between the parties, therefore, is whether in fact the cloth filter pads are used to induce or cause a refining or chemical process within the intent of the statutory exemption. Plaintiff’s primary argument is that its filtration stage is a refining process.
This issue may be resolved by adherence to the decisions of the Appellate Division and the Supreme Court in Ramac Explosives, Inc. v. Taxation Div. Director, supra. The Appellate Division in Ramac found that dynamite blasting in a quarry separates the stone in ledge rock from soil, clay, decomposed materials, tree roots and other “impurities,” as well as from the “extraneous matter” of the ledge itself. 125 N.J.Super. at 157, 309 A.2d 465. The court also concluded that blasting reduces the ledge rock to a manageable and commercially useful size and quality. Id. Relying upon accepted definitions of the verb “refine,” the court held that dynamite blasting constitutes a refining process within the intent of N.J.S.A. 54:32B-8.20 (then N.J.S.A. 54:32B-8(t)). The court cited in particular Webster’s Third New International Dictionary (1966) and N.J.A.G. 18:24-4.2, the Director’s own regulation construing this exemption, which is as follows: “ ‘Refining’ means the making fine or pure or partially free from extraneous or undesirable matter.” The Supreme Court affirmed the opinion of the Appellate Division despite the well-reasoned dissent of Justice Pashman, who argued that the term “refining process” means a process in which the end products differ chemically from the initial components, as in the refining of petroleum and iron ore. 64 N.J. at 552, 319 A.2d 65.
*91 The State’s witness in the present case was a professor of chemical engineering at Princeton University. He offered the opinion that the term “refining process” in the parlance of chemical engineering applied to processes more complicated than a filtration, screening or sieving process as is used by plaintiff, and that in fact the term is almost universally limited to petroleum refining, sugar refining and metal refining. He acknowledged, however, that the term could have broader application outside of the context of chemical engineering and that the filtration process employed by plaintiff is “perfectly consistent” with the definition of “refining process” set forth by the Director in N.J.A.C. 18:24-4.2.
The significance of the court’s conclusion in Ramac is that it construed the term “refining process” to mean a physical separation process as well as a chemical reaction process. The court adopted the Director’s own definition of “refining process” as contained in N.J.A.C. 18:24-4.2. This court must apply the law as it has been interpreted by the Appellate Division and the Supreme Court and as a result must reject the definition urged by the State through its expert witness.
There does not appear to be any basis for distinguishing the facts of Ramac from the facts adduced in this proceeding. The filtration stage of plaintiff’s manufacturing process is analogous in function to the dynamite blasting described in Ramac. Both processes remove impurities and extraneous matter from a substance in order to render it commercially useful. Accordingly, I am constrained to hold that the cloth filter pads purchased by plaintiff are used to cause a refining process and that the purchase of such pads is exempt from imposition of the sales tax. This conclusion makes it unnecessary to consider the other points raised by the parties.
The Clerk of the Tax Court will enter a judgment vacating the Director’s two separate assessments against plaintiff, including any related interest and penalties.

This exemption was codified as NJ.S.A. 54:32B-8(t) prior to the enactment of L. 1980, c. 105 (§ 32), effective September 11, 1980.