HOPKINS, J.T.C.
This is an appeal from the denial by Director, Division of Taxation, of a claim for refund filed by plaintiff (taxpayer) of a sales tax in the amount of $51,402.50, together with interest, which had been paid on a power shovel, rock trucks and loaders purchased during the year 1979. Director also denied a second sales tax refund claim in the amount of $6,416.75 in sales tax paid on a loader in 1980. Taxpayer contends that Director improperly denied refunds because the sales tax was paid on equipment used in the production of stone and which was exempt pursuant to N.J.S.A. 54:32B-8(m)(l), now codified as N.J.S.A. 54:32B-8.13(a).
Equipment at issue for the tax year 1979 are one # 245 Caterpillar front shovel, three # 769C Caterpillar rock trucks and a # 980C Caterpillar loader. Equipment at issue for the tax year 1980 is a # 980C Caterpillar loader.
Taxpayer owns and operates a quarry site consisting of approximately 300 acres. It produces and sells trap rock and shale in various sizes.
The subject equipment is utilized at the quarry site in the following manner. Initially, the overburden (consisting of vegetation and soil) is removed from the top of the quarry face. The stone face is then blasted to break off large chunks of trap rock and shale (hereinafter referred to as “stone”). Caterpillar front shovels and the Caterpillar loaders pick up and deposit the chunks of stone into the Caterpillar rock trucks. Caterpillar rock trucks then transport the stone to an onsite crusher plant.
*147 At the crushing site the large chunks of stone are crushed, cleaned and sized. The size of the stone is determined by the number of jaws in the crusher through which the stone is placed. Stone comes out of the crusher, in uniform sizes, into various piles. After the stone is crushed, cleaned and sized, some stone is blended by the Caterpillar loaders which mix either various sizes of stone or stone and other materials, such as dust and fines, when such blended mixture has been specified by taxpayer’s customers.
Stone, both blended and unblended, is removed from the crushing site and transported on the Caterpillar loaders to an onsite stockpiling area. At the stockpiling area the Caterpillar loaders, from time to time, maintain the required consistency of the blended stone by mixing. The loaders also make up blends to customers’ specifications from various stockpiled stone types.
The front-end shovel and rock trucks are used solely by plaintiff for the activities listed above. Loaders are used 65% of the time for the activities listed above and 35% of the time for loading customer trucks and maintaining haul roads. All of the equipment is used only onsite and none is licensed for over-the-road use.
The New Jersey Sales and Use Tax Act imposed a tax of 5% on the receipts of every retail sale of tangible personal property, not otherwise exempt, and on certain specifically enumerated services. N.J.S.A. 54:32B-8.1, et seq. The issue is whether the trucks, loaders and shovel used by plaintiff in its quarry business are exempt. N.J.S.A. 54:32B-8 provides as follows:
Receipts from the following shall be exempt from the tax on retail sales imposed under subsection (a) of section 3 and the use tax imposed under section 6:. . .(m)(l) sales of machinery, apparatus or equipment for use or consumption directly and primarily in the production of tangible personal property by manufacturing, processing, assembling or refining; ...
In analyzing the issue presented it is necessary to begin with the principle that tax exemptions are to be strictly construed and all doubts which arise are to be resolved against the party seeking the exemption. Princeton Univ. Press v. Princeton, 35 N.J.Super. 209, 214, 172 A.2d 420 (1961); Mal Bros. Contracting Co. v. Taxation Div. Director, 124 N.J.Super. 55, 61, *148 304 A.2d 750 (App.Div.1973); certif. den. 63 N.J. 554, 310 A.2d 469 (1973); Container Ring v. Taxation Div. Director, 1 N.J.Tax 203 (Tax Ct.1980), aff’d 4 N.J.Tax 527 (App.Div.1981), certif. den. 87 N.J. 416, 434 A.2d 1090 (1981). Thus, the parties seeking the benefit of a tax exemption have the burden of establishing that they come clearly within its provisions. Container Ring, supra at 208. However, the rule of strict construction does not require a strained construction or a construction that begrudges. Rather, it means that the exemption is not to be extended beyond the ascertainable legislative intention. Deubel v. Kervick, 33 N.J. 568, 574, 166 A.2d 561 (1960).
The Director has promulgated regulations, pursuant to N.J.S.A. 54:32B-24(1), with respect to the exemption in N.J.S.A. 54:32B-8.13(a).
N.J.A.C. 18:24-4.2 defines machinery, apparatus or equipment to include:
.. . [A]ny complex mechanical, electrical or electronic device, mechanism or instrument which is adapted to the accomplishment of a production process, and which is designed to be used and is used, in manufacturing, converting, processing, fabricating, assembling or refining tangible personal property for sale.
Manufacturing or processing is also defined in N.J.A.C. 18:24-4.2 as:
... the performance of an operation or series of operations, the object of which is to place items of tangible personal property in a form, composition, or character different from that in which they were acquired. The change in form, composition, or character must be a substantial change, and it must result in transformation of property into a different or substantially more usable product.
Further, refining is defined as:
... making fine or pure, or partially free from extraneous or undesirable matter.
N.J.A.C. 18:24-4.4(b) provides:
Production is limited to those operations commencing with the introduction of raw materials into a systematic series of manufacturing, processing, assembling or refining operations and ceases when a product is in a form in which it will be sold to the ultimate consumer and does not include any activities which are distributive in nature. For example, a machine which packs a product into shipping cases after the product is in the form in which it will be purchased by the ultimate consumer is not considered to be used in production.
Director’s regulations regarding the “direct and primary” aspects of machinery used in a manufacturing or processing operation are set forth in N.J.A.C. 18:24 — 4.4(c) and (d):
*149 (c) Machinery, apparatus, or equipment is considered to be directly used in production only when it is used to initiate, sustain or terminate the transformation of raw materials into finished products. In determining whether property consisting of machinery, apparatus or equipment is “directly” used, consideration must be given to the following factors:
1. The physical proximity of the property in question to the production process in which it is used;
2. The proximity of the time of use of the property in question to the time of use of other property used before it and after it in the production process; and,
3. The active causal relationship between the use of the property in question and the production of a product. The fact that particular property may be considered essential to the conduct of manufacturing, processing, assembling or refining because its use is required either by law or practical necessity does not, of itself, mean that the property is used directly in manufacturing, processing, assembling or refining. For example, property used to prevent accidents, which may be required by law, is not considered directly used.
(d) Concerning primary use, where a single unit of machinery, apparatus or equipment is put to use in two different activities, one of which is a “direct use” and the other of which is not, the property is not exempt from tax unless the manufacturer, processor, assembler or refiner makes use of the property more than 50 percent of the time directly in manufacturing, processing, assembling or refining operations, except in those cases where such machinery, apparatus or equipment is rented, leased, or used by persons other than the purchaser.
In order to determine whether the equipment qualified for the exemption, it becomes necessary to focus on the quarry operation and determine when production commences. In this respect, while there is no New Jersey case which considered the issue here involved, there is precedent as to when a quarry operation commences. It should be noted that the subject exemption applies to machinery used directly in production of tangible personal property by manufacturing, processing, assembling or refining. Ramac Explosives v. Taxation Div. Director, 125 N.J.Super. 154, 309 A.2d 465 (App.Div.1973), aff’d 64 N.J. 551, 319 A.2d 65 (1973), involved the issue of whether a quarry operation was entitled to an exemption on dynamite used to blast stone loose from the quarry face. N.J.S.A. 54:32B-8(t), now codified as N.J.S.A. 54:32B-8.20, allows an exemption from sales tax on sales and materials, such as chemicals and catalysts, used to induce or cause a refining or chemical process, where such materials are an integral or a central part of the processing operation, but do not become a component of the finished product. The court held that blasting is a “processing operation.” 125 N.J.Super. at 157, 309 A.2d 465. It further went on *150 to hold that the removal of the rock from the quarry face was a refining operation and that “in its natural state, ledge rock is intermingled with soil, clay, decomposed materials, tree roots and other materials, and that blasting separates rock from these ‘impurities.’ ” It further stated that:
. .. blasting reduces the ledge rock to a manageable and commercially useful size and quality so that the resulting stone may reach specifications established by various customers, such as the Department of Transportation for road building. In that sense, too, we regard blasting as a “refining” process.. . [Id. at 157, 309 A.2d 465]
As the definition of refining set out in Ramac is controlling for the purposes of the subject case, rock processing commenced at the rock face in the quarry. Accordingly, the loaders used to place rock in the trucks qualify for exemption.
Director has cited an unreported case of the former Division of Tax Appeals which held that a power shovel, located at the quarry face, which was used to load rock for transport to the taxpayer’s rock crushing plant, was not exempt under the subject exemption statute. In that case the Division relied upon Tri-State Asphalt Corp. v. Glander, 152 Ohio St. 497, 90 N.E.2d 366 (Sup.Ct.1950), and Tulsa Machinery Co. v. Oklahoma Tax Comm’n, 208 Okl. 138, 253 P.2d 1067 (Sup.Ct.1953), to support its position. The Tri-State Asphalt Corp. case involved a crane which was self-propelled and had a boom and bucket similar to a power shovel. It was used to load sand and slag into a portable asphalt plant. That case, which is a landmark case in Ohio, stands for the proposition that machinery used prior to actual commencement of the production of a tangible personal property and subsequent to the completion of such production, is not used “directly in the production of tangible personal property.” In the subsequent case of Powhatan Mining Co. v. Peck, 160 Ohio St. 389, 116 N.E.2d 426 (Sup.Ct.1953), that same court stated as follows:
We believe that our previous decisions have generally recognized that where the principal use of property claimed to be used “directly in” a particular activity is in transportation to or from that activity, as distinguished from transportation which is part of that activity or between essential steps of that activity, such use is not “directly in” such activity within the meaning of Sections 5546-1 and 5546-25, General Code. Tri-State Asphalt v. Glander, Tax Com’r, supra 152 Ohio St. at p. 504, 90 N.E.2d 366, and American Compressed Steel Corp. v. Peck, Tax Com’r [160 Ohio St. 207, 115 N.E.2d 153], supra. [116 N.E.2d at 428]
*151 Further, while the Oklahoma case of Tulsa Machinery Co. also involved a “motor powered shovel” used to load rocks on a truck for transportation to rock crushers, the exemption involved was much more strict than the New Jersey tax exemption in that it provided:
This exemption shall not apply unless such machinery and equipment is incorporated into, and is directly used in, the process of manufacturing property subject to taxation under the Sales Tax Act.. .. [253 P.2d at 1069, 208 Okl. at 140; emphasis added].
The court held that although the taxpayers were engaged in manufacturing, the process of manufacturing did not take place or commence until the rock was conveyed to and placed in the first crusher. In the subject case the refining process, which is covered by the New Jersey tax exemption, has been held to commence at the quarry face. Ramac Explosives v. Taxation Div. Director, supra.
Two other cases cited by Director also fail to support his position. They are Linwood Stone Products Co. v. State Dep’t of Revenue, 175 N.W.2d 393 (Iowa Sup.Ct.1970), and Rock of Ages Corp. v. Com’r of Taxes, 134 Vt. 356, 360 A.2d 63 (Sup.Ct. 1976). The Linwood Stone Products Co. case interpreted the Iowa exemption statute to apply only where raw material to be used in processing was tangible personal property, rather than real property. Accordingly, until after the severance of rock at the quarry, there could be no personal property used in processing. The Rock of Ages Corp. case is distinguishable, for the Vermont exemption statute required the process to be that of “manufacture.” The court held that removal of the rock from the quarry face was not a manufacturing process. 360 A.2d at 65.
It must next be determined whether the use of trucks to transport stone from the quarry face to the crushers constituted use of trucks for transportation as distinguished from stone processing, so as to disqualify them for the exemption.
The Director’s regulations provide that “equipment is considered to be directly used in production only when it is used to initiate, sustain or terminate the transformation of raw materi *152 als into finished products.” N.J.A.C. 18:24-4.4(c) (emphasis added). Further, consideration should be given to factors such as physical proximity to the production process, the proximity of the time of use to the time of use of other production equipment, and the causal relationship between the equipment’s use and the production of a product.
The aforesaid principles, particularly the use of the word “sustain,” indicate a desire not to fragment a production process where it involves more than one step. Further, that interpretation is consistent with the court opinions in most other states where the issue has been considered.
In Dye Coal Co. v. Evat, Tax Com’r, 144 Ohio St. 233, 58 N.E.2d 653, 654 (Sup.Ct.1944), the court held that trucks purchased by a mining company to be used exclusively to haul coal from the excavation or pits, following its extraction from the earth, to a tipple where the coal was cleaned and graded for shipment, were used in mining, and were exempt from tax. Schenley Distillers, Inc. v. Commonwealth ex rel. Luckett, 467 S.W.2d 598 (Ky.Ct.App.1971), held that a conveyer system used to carry cases of empty bottles from the loading point to bottling lines was machinery used directly in the manufacturing process; Niagara Mohawk Power Corp. v. Wanamaker, 286 App.Div. 446, 144 N.Y.S.2d 458 (App.Div.1955), aff’d 157 N.Y.S.2d 972, 2 N.Y.2d 764, 139 N.E.2d 150 (Ct.App.1955), held that a crane and car dumper, which unloaded incoming coal, the conveyer belt which moved the coal to the boiler, as well as a narrow gauge railway that carried the ash and slag away from the boiler, were all used directly in the production of electricity. The Massachusetts case of Rowe Contracting Co. v. State Tax Com’r, 361 Mass. 158, 279 N.E.2d 675 (Sup.Jud.Ct.1972), involved the same type quarry operation as that conducted by the subject taxpayer. After concluding that processing begins with the fragmentation of the rock by the initial blast, it went on to state:
If processing starts with the initial blast we think the subsequent steps of collecting the rock broken by the initial blast and transporting it to the crushing plant are part of the integrated process carried on within the quarry. .. The quarry is essentially an industrial plant in which the production line for that rock, which is to be processed further than by the initial blast, begins at least with picking up the broken rock and taking it to the crushing mill. If, instead of *153 using Euclid trucks, the rocks had been placed on a conveyer belt or system, the conveyer system would have been regarded as an integral part of the crushing plant. We think (1) that the Euclid trucks are used directly in the processing operation where that use follows the processing implicit in the initial blast, and (2) that this operation continues until the crushed and screened materials have been stockpiled. [See Schenley Distillers, Inc. v. Commonwealth ex rel. Luckett, 467 S.W.2d 598, 599-600 (Ky.). .. .] [361 Mass, at 164, 279 N.E.2d at 678-79]
In Indiana two intermediate appellate courts have taken conflicting positions. In State, Dept. of Revenue v. Calcar Quarries, 394 N.E.2d 939 (Ct.App.1979), the court held that a stock truck and tractor-loaders, used to transport stone from the quarry to the place where it was used to make concrete and asphalt, were directly used in an integrated production process. However, Ind. Dept. of Rev. v. Cave Stone Inc., 409 N.E.2d 690 (Ct.App.1981), held that as no processing occurred during the transportation of stone from the quarry face to the crushers, the trucks were not exempt. On rehearing, 427 N.E.2d 922 (1981), it acknowledged a conflict with Calcar Quarries. Heath v. Midco Equip. Co., 256 Ark. 14, 505 S.W.2d 739 (Sup.Ct.1974), denied exemption on trucks used to carry stone from the quarry face to crushers. However, the statute there involved specifically stated that the intent was to exempt only such machinery and equipment as shall be utilized directly in the actual process. The court recognized that there was a distinction between its statute and those of other jurisdictions where such trucks had been considered as directly used in the quarry processing.
Those jurisdictions with exemption statutes similar to New Jersey generally recognize that once a manufacturing or refining process commences, equipment used to transfer units between processing steps becomes a part of the integrated operation. That reasoning comports with N.J.A.C. 18:24-4.4(c), which defines exempt equipment to include equipment used to sustain the process. Accordingly, as the quarry operation was an integrated process by which stone was removed from the quarry face and was ultimately processed to various blends of crushed stone, the trucks were directly used in that process and were tax exempt.
The processing was not completed until the stone was transferred away from the crusher. That is necessarily so because *154 the processing could not continue if the stone were not removed. The loaders were used to blend stone both at the crusher site as well as at the storage bins. Further, the loaders were also used to maintain the various blends at the storage bins. Loaders at the crusher site were also exempt from tax.
The parties have stipulated that the loaders were used more than 50% of the time in what I have found to be a refining process within the provisions of N.J.S.A. 54:32B-8(m), and so there is no issue as to the primary use of the loaders. See N.J.A.C. 18:24 — 4.4(d).
Taxpayer’s claim for interest on the refund is predicated on the principle of equity. However, the facts show that the taxes were voluntarily paid. Further, payment was not a prerequisite to a judicial determination of the issue involved. N.Y. Susquehanna & W.R.R. v. Vermeulen, 44 N.J. 491, 210 A.2d 214 (1965). Under such circumstances, and as there is no statutory authority for the Director to pay interest on a tax refund under the New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1, et seq., interest cannot be paid. Universal C.I.T. Credit Corp. v. Paramus, 93 N.J.Super. 28, 30, 224 A.2d 517 (App.Div.1966), certif. den. 48 N.J. 580, 227 A.2d 138 (1967).
Plaintiff will submit a form of judgment pursuant to R. 4:42-l(b).