ANDREW, J.T.C.
This proceeding involves an assessment made by defendant Director of the Division of Taxation upon plaintiff for sales tax pursuant to the Sales and Use Tax Act (the act), N.J.S.A. 54:32B — 1 et seq. Plaintiff paid the assessment in accordance with defendant’s determination and now seeks a refund on the basis of a claimed exemption from sales tax.
Plaintiff maintains that the sales transactions upon which defendant’s assessment were made consisted of sales of items that are exempt from taxation pursuant to N.J.S.A. 54:32B-8.-20.[1] The assessment was made following an audit by defendant of plaintiff’s records for the calendar years 1970 through 1975 and reflected plaintiff’s purchases of various materials used in plaintiff’s foundry operation. Specifically, plaintiff contends that his purchases of certain materials identified generically as sands, binders and washes[2] were exempt from taxation within the purview of N.J.S.A. 54:32B-8.20 (§ 8.20) which provides for exemption from sales and use tax as follows:
*174 Receipts from sales of materials, such as chemicals and catalysts, used to induce or cause a refining or chemical process, where such materials are an integral or essential part of the processing operation, but do not become a component part of the finished product are exempt from the tax imposed under the Sales and Use Tax Act.
It has been stipulated by the parties that the materials in question are chemicals and are an essential part of plaintiff’s processing operation. It has also been conceded that these materials do not become a component part of plaintiff’s finished product. Thus, it is immediately evident that the parties have reduced this matter to an issue of whether the materials purchased by plaintiff are “used to induce or cause a refining or chemical process.” If the answer to this pivotal question is affirmative as to either a refining process or a chemical process, then plaintiff’s purchases of such materials were exempt and plaintiff is entitled to a refund as to the tax assessment relative to those specific materials.[3]
Plaintiff John W. Kalpin is the president, owner and operator of General Foundry Company which was formed in 1947. General Foundry is a gray-iron foundry which produces iron castings that range in size from a few ounces to as much as several tons. These castings are generally machine parts that are used by several industries in a variety of machinery, such as food-making, baking and medical machinery.
Plaintiff indicated that different types and proportions of sands, binders and washes are used in the production of castings in order to achieve a particular type of surface or finish on the casting. Essentially, the process of producing an iron casting begins with a pattern or model of the machine part or casting to be produced. This model or pattern, usually made of wood, is the foundation around which plaintiff packs a mixture of sand and binder. The function of the binder is to hold the grains of sand together into a hardened mass with sufficient strength to resist the effects of molten metal with temperatures that range *175 from 2500 to 2800 degrees Fahrenheit. Thereafter a wash is applied which fills the spaces between the grains of sand in order to provide a smoother finish on the casting to be produced. This constitutes a mold. A core is made following the identical process. The function of the core is to go into a hollow mold and prevent molten metal from filling in that area and results in creating a hole or cavity in the casting.
Molten metal having a temperature of approximately 2700 degrees Fahrenheit is poured into the mold containing a core and the liquid metal fills the cavity. After the metal cools, the mold and core are broken away and discarded, leaving the iron casting.
Plaintiff varies the constituents of the mold in order to achieve a particular type of surface on the casting. A customer indicates the degree of smoothness required on a casting and plaintiff prescribes the kinds and the proportions of ingredients in the production of a mold in order to obtain the desired casting surface.
The actual metal utilized by plaintiff for any specific casting during the audit period depended upon the specifications of his customers, but essentially the metal was gray or cast iron with the addition of certain alloys such as chrome, nickel, copper, manganese and/or molybdenum in varying percentages, again based solely on customer requirements.
The general rule as to the construction of tax exemptions is that such exemptions are to be strictly construed against the claimant, because such exceptions represent a departure from the equitable proposition that everyone should bear his just and equal share of the public burden of taxation. Princeton Univ. Press v. Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961); Julius Roehrs Co. v. Tax Appeals Div., 16 N.J. 493, 497-A98, 109 A.2d 611 (1954); Mal Bros. v. Taxation Div. Director, 124 N.J.Super. 55, 61, 304 A.2d 750 (App.Div.1973), certif. den. 63 N.J. 554, 310 A.2d 469 (1973); Container Ring v. Taxation Div. Director, 1 N.J.Tax 203 (Tax Ct.1980), aff’d o.b. 4 N.J.Tax 527 (App.Div. 1981), certif. den. 87 N.J. 416, 434 A.2d 1090 (1981).
*176 Moreover, the act itself presumes taxability and places the burden of proving that a receipt from the sale of tangible personal property is not taxable upon the person required to collect the tax or upon the customer. N.J.S.A. 54:32B-12(b), Spencer Gifts, Inc. v. Taxation Div. Director, 3 N.J.Tax 482, 489, 182 N.J.Super. 179, 440 A.2d 104 (Tax Ct.1981).
However, the rule of strict construction does not require a strained construction or a construction that begrudges. It rather means that exemption is not to be extended beyond the ascertainable legislative intention. Deubel v. Kervick, 33 N.J. 568, 166 A.2d 561 (1960).
Being mindful of the foregoing precepts I now turn to plaintiff’s contentions relative to exemption from taxation pursuant to § 8.20.
I
Plaintiff contends initially that the materials used to produce a mold or core, i.e., sands, binders and washes, are used to induce or cause a refining process and therefore are exempt under § 8.20. For support, he relies on the testimony of his expert, William T. Bourke, a metallurgical engineer, and on the case of Ramac Explosives, Inc. v. Taxation Div. Director, 125 N.J.Super. 154, 309 A.2d 465 (App.Div.1973), aff’d but mod. 64 N.J. 551, 319 A.2d 65 (1974). Bourke was of the opinion that varying the types and proportions of the mold ingredients of sand, binder and wash would have an effect on the surface quality of the casting and additionally would have an effect on the soundness or quality of the casting itself, and therefore plaintiff’s process constituted a “refining” process. He postulated this opinion on the premise that the term “refining” included improving the quality of a product. Therefore, since the various constituents of the molds and cores did improve the quality of a casting, they were “used to induce or cause a refining ... process.”
Plaintiff seeks a liberal or broad construction of the word “refining.” He urges this court to conclude that improving the quality of a product in and of itself meets the “refining” *177 definitional requirement as set forth in § 8.20. Plaintiff supports his contention by referring to the language of Justice Pashman, who dissented from the majority decision in the Supreme Court when Ramac was affirmed but modified on other grounds. Justice Pashman wrote that the majority had construed the word “refining” in a broad rather than a restrictive sense. Therefore, plaintiff states that this court must also liberally or expansively construe the word “refining” rather than adopt a restrictive, parochial interpretation. Plaintiff concludes its argument on this point with the proposition that the exemption, fairly enforced, “must be interpreted as broadly as possible, so that anyone remotely within the purview of the exemption would be included.”
In Ramac the Appellate Division affirmed a determination by the Division of Tax Appeals that receipts from the sales of dynamite to stone quarries were exempt from sales tax pursuant to the exemption set forth in § 8.20 (then identified as N.J.S.A. 54:32B-8(t)). The specific issue which confronted the court in Ramac was whether dynamite was used to induce or cause a refining process or, as phrased by the court, “whether blasting in a stone quarry [was] a refining process.” Relying upon a definition of the word “refine” set forth in Webster’s Third New International Dictionary and a definitional regulation adopted by the Director of the Division of Taxation, the court held that the use of dynamite in a blasting operation did indeed constitute a refining process.
The definitions of “refining” were set forth by Judge Lynch of the Appellate Division as follows:
To “refine” is “1. To reduce to a fine, unmixed or pure state; separate from extraneous matter. . .” Webster’s Third New International Dictionary 1908 (1966). N.J.A.C. 18:24-4.2, adopted under the Sales and Use Tax Act, defines “refining” as: “ ‘Refining’ means the making fine or pure or partially free from extraneous or undesirable matter.” [125 N.J.Super. at 157, 309 A.2d 465]
In its review of the record in Ramac, the Appellate Division noted that the Division of Tax Appeals had found that the use of dynamite in blasting ledge rock constituted refining because it separated the rock from soil, clay, decomposed materials, tree roots and other materials. The Appellate Division agreed that *178 blasting did separate the rock from such impurities and as such did fit within the statutory meaning of “refining.”
The Division of Tax Appeals judge further found that separating the ledge rock from the other materials also constituted a refining process because the quality of the rock was improved as refined. The Appellate Division also went on to state in its affirming opinion that blasting did reduce ledge rock to a manageable size and quality. Using this language, plaintiff contends that his process constitutes refining because the proper mixture of the various ingredients in the making of a mold or core will affect the surface quality of the iron casting. Therefore, plaintiff maintains that the materials are used to induce or cause a refining process because the surface of the casting is improved in quality. Even defendant’s expert did not contest the fact that various mixes of the ingredients of a mold could improve the surface quality of a casting. If, therefore, plaintiff’s position is accurate, the sales of materials used in producing plaintiff’s molds and cores are exempt within the scope of § 8.20.
Defendant’s expert, Dr. Frank Dittman, a professor of chemical engineering at Rutgers University, was of the opinion that the process of producing an iron casting is not a refining process and is never referred to as such in the foundry business. He felt that the term “refining” applied only when impurities or extraneous matter are removed from a product. I agree. Ramac does not dictate a different conclusion. In Ramac the blasting operation was deemed to be a refining process essentially because blasting separated the ledge rock from a number of impurities and therefore the operation was within the definition concept of “[separation] from extraneous matter.” The Appellate Division was confronted with a process that did in fact separate extraneous matter from the final product. Here there are no impurities or extraneous materials removed from the molten metal in the casting process.
The judge of the Division of Tax Appeals in Ramac stated that it was the separation of impurities that constituted the *179 process which improved the quality of the product. This conclusion is also implicit in the opinion of the Appellate Division in Ramac in that blasting improved quality by removing impurities and additionally reduced the ledge rock to a commercially useful size. The only way that the quality of the rock was improved was by its separation from extraneous materials.
In accord with this conclusion is the opinion of Judge Lario of this court in Grinding Balls, Inc. v. Taxation Div. Director, 176 N.J.Super. 620, 1 N.J.Tax 514, 424 A.2d 470 (Tax Ct.1980). That case involved a process which used grinding balls to grind materials for the paint, cement and coal business into a powder. Plaintiff claimed that this use of grinding balls constituted a refining process. Judge Lario concluded that since the grinding of particles into a powdery state did not remove any impurities from the initial material, it did not constitute a refining process within the meaning of § 8.20.
I am not persuaded by plaintiff’s assertion that the word “refining” used in § 8.20 was intended to encompass solely an improvement in quality without a corresponding removal of extraneous material. I conclude in this case that plaintiff did not engage in a refining process within the intendment of the exemption provision.
II
Alternatively, plaintiff argues that the materials he purchased were used to induce or cause a chemical process and thus the sales of such materials are exempt from sales tax.[4] Plaintiff does, however, concede that it is difficult to establish that a *180 chemical reaction does in fact take place between the mold ingredients and the molten metal.
Plaintiff’s expert testified that a chemical reaction takes place when molten metal is poured into a mold, in that the casting process results in a particular type of surface finish or skin on the metal casting when the molten metal solidifies. It was further his opinion that this surface or skin is controlled by the types and proportions of sands, binders and washes that are used to create a mold. Specifically, he «indicated that the mold materials affect the cooling rate of the casting and thereby alter the chemical composition of its surface. He described this skin or film as chromium oxide. Although he characterized the process as chemical in nature, he could not explain how this chemical reaction took place. He stated that “the mechanism of that exact chemical reaction is not fairly understood.”
On the other hand, defendant’s expert identified the reaction between the mold and molten metal as being purely physical. It was his opinion that the materials used in the mold are not utilized to interact chemically with the molten metal but rathér are chosen based on their inertness and are actually used to prevent chemical action in the casting process. Complete inertness of the mold materials is the desideratum. He further explained that the skin or film on an iron casting is produced as a result of an interaction between a component of the molten metal and the oxygen that cannot be totally excluded from the casting process when the molten metal is poured into the mold. He indicated that this surface skin is usually undesirable and not beneficial.
Based on the testimony of the experts presented by the parties I conclude that plaintiff has not established that a chemical reaction does in fact take place when the molten metal used is poured into various molds and then solidifies. I find that the opinion of plaintiff’s expert was vague, nonpersuasive and basically inconclusive. I find, further, that I am in agreement *181 with the cogent opinion of defendant’s expert that this is essentially a physical process.[5]
The primary function of the mold and its constituent ingredients is to provide physical shape for the metal. The mold materials are selected for their inert qualities in order to avoid chemical reaction with the molten metal. With regard to the surface skin or film, I conclude that such surface skin or film results from interaction of the molten metal with oxygen, not with any of the mold ingredients.
I conclude, further, that no chemical action is intended between the mold ingredients and the molten metal. Rather, one seeks to avoid or minimize chemical reactions. I am convinced that the process as described by plaintiff was not a chemical process. I am satisfied that the mold and core materials used by plaintiff are not embraced within the scope of § 8.20 and therefore do not qualify for the exemption claimed.
The Clerk of the Tax Court will enter judgment dismissing plaintiff’s complaint.

This exemption was codified as N.J.S.A. 54:32B-8(t) prior to the enactment of L.1980, c. 105, § 32, effective September 11, 1980.

Specifically the materials in dispute are albany, olivine and silica sand, binders identified as cerelose dextrose, no bake resins, liquid resin, core oil, Steinex and a wash identified as core bake wash A.

In addition to sands, binders and washes, defendant’s assessment included tax on certain items of tangible personal property which plaintiff has conceded are not exempt from sales tax.

As defendant correctly points out, plaintiff does not contend that the process involving the making of the mold itself is a chemical process sufficient to satisfy the exemption requirements. As this court held in Tuscan Dairy Farms, Inc. v. Taxation Div. Director, 4 N.J.Tax 92 (1982) a § 8.20 exemption is permissible only for materials used to induce or cause a chemical or refining process in the finished product. That process is not the making of the mold.

Dr. Dittman indicated that when molten metal comes into contact with a mold a physical effect occurs, with one exception. This is when seacoal, a carbonaceous mold coating, is used to prevent the formation of iron oxide. Plaintiff did not use seacoal in its casting process.